IN RE SARAH C. REYNOLD'S ESTATE.

January Term, 1920.

Present:  WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed February 9, 1920.

*Mortgages—Proof of Mortgage Debt Against Decedent Mortgagor's Estate—Fire Insurance Money as Security for Mortgage Debt—Right of Devisee to Exoneration From Subsequent Mortgage—Sale Under G. L. 3359—Waiver by Devisee of Right to Exoneration—Provision in Will for Payment of Debts—Insurance Money No Part of General Assets of Estate—Fire Insurance—Necessity for Insurable Interest —Devise "Absolutely" Did Not Give Right to Exoneration From Mortgage.*

1. Mortgagees, in presenting their notes against the deceased mortgagor's estate, are within their legal rights, and can insist upon and receive any dividend paid by the estate without prejudice to their security for any unpaid balance.

2. Where mortgagees proved their note against the mortgagor's estate, and the executrix paid the note from the proceeds of a fire insurance policy on the mortgaged property, as she had a right to do, and as the mortgagees named in the policy had a right to insist upon, the situation of the parties was not affected by a memorandum as to how she treated the insurance money afterward filed in probate court by her.

3. While insurance money, when paid, stands in the place of the property insured as security for the mortgage debt, it retains its character as security only until applied to the debt by mutual consent or operation of law.

4. At common law, a devisee of a specific parcel of real estate, which the testator had mortgaged after the execution of the will, was entitled to have the land exonerated by the payment of the mortgage debt out of the personal property of the estate.

5. Where mortgaged property of an estate is sold under G. L. 3359, providing that such property may be sold under order of the probate court, the avails applied on the mortgage debt, and the balance only held against the estate, a devisee's common-law

right of exoneration is defeated, and the mortgaged property is, to the extent of its value, made the primary source of payment.

6. Where an executrix applied for a license to sell all the real estate of the testatrix, representing that the personal property was insufficient to pay the debts and that the real estate was incumbered by mortgages (which had been given after the execution of the will), and, while the application was pending, the buildings on a ninety-acre lot burned and the insurance was applied to pay the mortgage on that lot, and later the probate court granted the license prayed for, directing that the other mortgage should be paid from the avails of the land covered by it, the procedure, in effect, was pursuant to G. L. 3359, and the devisees of the ninety-acre lot, who were also the mortgagees, were not entitled to exoneration.

7. In such case, the devisees, by deliberately and knowingly accepting payment of their mortgage from the insurance money, instead of standing upon the allowance of their note against the estate and insisting that their devise be exonerated, waived any right they otherwise would have had to have the mortgage paid out of any other funds.

8. A provision in a will directing the payment of all just debts is a mere formality, adding nothing of a testamentary character to the instrument.

9. The insurance money remaining after the payment of the mortgage stood as a substitute for the buildings destroyed, and constituted no part of the general assets of the testatrix, and this though the personal property was insufficient to pay the debts, and the insurance was placed and paid for by the executrix after the death of the testatrix.

10. Such insurance was obtained by the executrix, at least to the amount of the mortgage, pursuant to an obligation assumed by her, and the balance was properly obtained to protect the contingent interest of the creditors in the property insured.

11. *Plimpton* v. *Farmers' Mut. Ins. Co.*, 43 Vt. 497, distinguished.

12. While great liberality is indulged in in determining whether one has anything at hazard in the subject-matter of particular insurance, he must have such a right or interest therein as the law will recognize and protect, which must be of such a character that the destruction of the property will have a direct effect upon it, and not a remote and consequential one.

13. The holders of a mortgage not covering the buildings insured and not calling for any insurance, were not protected by the insurance, their interest in the buildings being indirect and remote and not an insurable interest.

14. The mortgages in question, having been paid out of the property on which they rested under circumstances against which no equities could prevail, ceased to be properly included in the liabilities of the estate, and the devisees took their respective properties as burdened without any exoneration.

15. The devise of two tracts of land to a devisee "absolutely" was simply to show that the devise was of a fee rather than of a life estate, as in the preceding paragraph of the will, and did not give him a right to exoneration of the land from a mortgage thereon.

APPEAL from the probate court for the District of Franklin allowing the executrix' account, and making final distribution of the estate of Sarah C. Reynolds under her will. Trial by Court on an agreed statement of facts after the March Term, 1919, Franklin County, *Wilson*, J., presiding. Decree, affirming the decree of the probate court. The appellants excepted.

The memorandum filed by the executrix in the probate court as to how she treated the insurance money reads as follows: "In explanation of the foregoing account I wish to state and make plain that while I have always treated the money received in insurance on the buildings burned as real estate, and still so treat it, I used a part of said insurance money to take up said thousand dollar mortgage, and now hold the same. The rest of said insurance money I deposited in the Welden National Bank in St. Albans, Vermont, where it now is. The amount so deposited is $517.45, and I hold a certificate therefor."

The probate court, among other things, decreed as follows: "(1) That the avails of the policy of insurance, $1,879.13, heretofore received in 1913 by said executrix subsequent to the burning in that year of the house and barns on the 'ninety-acre lot,' shall be substituted for the buildings thus destroyed, and treated as real estate, and shall be added to the avails received from the sale of said lot made in 1916, as reported to said court. (2) That the real estate given by the will to the several devisees shall be liable for the payment of the debts and expenses of administration in proportion to the amount of the several devises; the

specific devise of the real estate to Job Reynolds 'absolutely' not being an exemption from such liability, as it appears to said court, in order to carry into effect the intention of the testatrix, and there not being other sufficient estate to meet such liabilities.'' The other material facts are stated in the opinion.

*Warren R. Austin* for the appellants.

*H. Elmer Wheeler* and *Elmer· Johnson* for the appellee.

POWERS, J. Sarah C. Reynolds and her husband, Job, lived on her farm in the town of St. Albans. This farm was made up of four parcels of land, as follows: A ninety-acre lot, on which the buildings stood; a forty-acre lot; a thirty-eight-acre lot called the Gilman Lot; and a thirteen-acre lot. In 1905, Reynolds and his wife executed to Annie R. Morrill, Abbie A. Morrill, and Alice M. Morrill a mortgage on the forty-acre lot, the Gilman Lot, and the thirteen-acre lot to secure their note for $500. And in 1907 they executed to the same parties a mortgage on the ninety-acre lot to secure their note for $1,000. Mrs. Reynolds died leaving a will which antedated these mortgages, and by which she gave her husband a life estate in the ninety-acre and forty-acre lots, and the fee of the Gilman Lot and the thirteen acres. The fee of the ninety-acre and forty-acre lots was given by the will, one-half to Abbie A. Morrill, trustee for Catheline I. Roche, and one-half to Abbie A. and Alice M. Morrill. Job Reynolds and Abbie A. Morrill were the executors of this will.

The mortgage notes above referred to were unpaid at the time of Mrs. Reynolds' death, and were presented to and allowed by the commissioners of her estate. This was on or before April 26, 1909. Pending the settlement of Mrs. Reynolds' estate, Job Reynolds mortgaged his interest therein to C. G. Austin, who became his surety on a nine hundred dollar note, which is now outstanding. The validity of this mortgage was determined by a decree of the court of chancery, from which no appeal was taken.

Job Reynolds died testate, and Nancy C. Stevens is his executrix.

The mortgage securing the one thousand dollar note contained a condition that the mortgagors should keep the buildings on the premises well insured ''for the benefit of this security.''

Accordingly, Abbie A. Morrill, surviving executrix of Sarah C. Reynolds' estate, caused the buildings referred to to be insured by a policy which provided that the loss should be payable to Annie, Abbie A., and Alice Morrill, mortgagees. In the summer of 1913 these buildings or some of them burned, and Abbie A., executrix as above, received from the insurance company the sum of $1,879.13. This came in a check payable to Abbie A. Morrill, Executrix, and Abbie A. Morrill, Annie R. Morrill, and Alice M. Morrill, mortgagees. The check was duly indorsed and cashed. From its avails the one thousand dollar note was paid and taken up. This was on August 4, 1913, and a few days later a discharge was executed on the mortgage, but was not recorded until some time in 1916. The balance of the insurance money was deposited in a bank, where it now remains.

Mrs. Reynolds' personal property was insufficient to pay her debts, and the probate court granted her surviving executrix license to sell all her real estate for that purpose. See *In re Reynolds' Est.*, 89 Vt. 224, 95 Atl. 498. At the same time the probate court ordered the executrix to pay the five hundred dollar mortgage, that a clear title could be given to the land covered by it. So far as this direction was concerned no appeal was taken, and the executrix paid off the mortgage accordingly.

[1, 2] When the mortgagees presented their notes to the commissioners as above stated, they were well within their legal rights. They could have insisted upon and received any dividend paid by Mrs. Reynolds' estate without prejudice to their mortgage security for any unpaid balance. *Walker* v. *Baxter,* 26 Vt. 710. So no question regarding the rights of the parties arises until the time when the executrix received the insurance money. Nor do we need to consider what she might have done with that money, nor what the result would have been if she had deposited all of it in the bank and allowed the mortgagees to enforce their allowances. What she actually did was to use the money to pay off the mortgage it was intended to protect. This she had a right to do. This the mortgagees named in the policy had a right to insist upon. The situation of these parties is not affected by the memorandum afterwards filed in the probate court as to how she treated the insurance money. What she did cannot be controlled by what she afterwards said she did.

[3] The insurance money when paid stood in the place of the property insured as security for the mortgage debt. *Powers*

v. *New England Fire Insurance Co.*, 69 Vt. 494, 38 Atl. 148; *Baker* v. *Rushford*, 91 Vt. 495, 101 Atl. 769. But such money retains its character as security only until applied to the debt by mutual consent or operation of law. 2 Jones Mort., § 910. It is argued, however, that, even if this is so, the rule only governs the rights of the parties to the mortgage, and that the devisees of the property covered by the mortgage are, for their protection, entitled to have the matter treated otherwise in the settlement of the estate.

[4-6] It was an established rule of the common law that a devisee of a specific parcel of real estate which the testator had mortgaged after the execution of the will was entitled to have the land exonerated by the payment of the debt out of the personal property of the estate. 11 R. C. L. 162, and cases cited. This rule, no doubt, is the real basis of the decision in *Walker* v. *Baxter, supra.* In its practical application, however, it is subject to G. L. 3359, which provides that encumbered property of an estate may be sold under the order of the probate court, the avails applied on the debt secured thereon, and the balance, only, held against the estate. When this course is taken, the common law right of exoneration is defeated, and the property covered by the mortgage is, to the extent of its value, made the primary source of payment. The record before us shows that the executrix on March 15, 1913, some time before the fire, made application to the probate court for license to sell all the real estate, therein representing that the personal property was insufficient to pay the debts, and that the real estate was encumbered by mortgages amounting to approximately $2,000, which had been proved against the estate. It was while this application was pending in the probate court that the buildings burned and the insurance was received and applied. The probate court granted the license prayed for, directing the executrix to pay the five hundred dollar mortgage, as above stated. This was, in effect, applying the statute referred to. At the time this order was made the one thousand dollar mortgage had been paid. Otherwise a similar order of payment, no doubt, would have been made regarding it. This the appellee expressly admits in the brief. In the circumstances shown, it cannot reasonably or equitably be claimed that the right of exoneration existed in favor of the devisees of the ninety-acre lot. They were themselves mortgagees of that lot. It is suggested that at the time

the insurance money was paid, Abbie A. Morrill had not qualified as trustee of Catheline I. Roche, and therefore the latter was not a party to the transaction; but the will provided that the trustee should not be required to furnish bonds, and as the law then stood no qualification was necessary until the probate court made an order predicated upon certain grounds specified in the statute. P. S. 2990.

[7-9] So it must be taken that all these devisees, instead of standing upon their allowance against the estate and insisting that their devise be exonerated, deliberately accepted payment of their mortgage knowing that the funds came from the insurance on the buildings thereon. They thereby waived any right they otherwise would have had to have the mortgage paid out of any other funds. In effect, they accepted the devise *cum onere,* and stand like one who has sold his land so situated without applying for aid in its redemption, in which case he cannot claim exoneration. *Haven* v. *Foster,* 9 Pick. (Mass.) 112, 19 A. D. 353. Nor is the result affected by the provision in the will directing the payment of all just debts. This is a mere formality adding nothing of a testamentary character to the instrument. 2 Redf. Wills, 855; *Wetmore & Morse Granite Co.* v. *Bertoli,* 87 Vt. 257, 88 Atl. 898. It does not follow, however, that these devisees have no interest in the insurance money not required for the payment of the mortgage. That balance remains standing as a substitute for the buildings destroyed. It so far partakes of the character of the real estate that it goes to the persons beneficially interested in such real estate, and constitutes no part of the general assets of the testatrix. Schoul. Exrs. & Admrs., § 218; *Culbertson* v. *Cox,* 29 Minn. 309, 13 N. W. 177, 43 A. R. 204; *Wyman* v. *Wyman,* 26 N. Y. 253; *Herkimer* v. *Rice,* 27 N. Y. 163. And this rule applies, at least where, as here, the personal property is insufficient to pay the debts, though the insurance was placed and paid for by the executrix after the death of the testatrix. Thus in *Perry* v. *Ashley,* 3 Sim. 97, the testator charged a dwelling house with an annuity to his widow, and subject thereto devised it to another, whom he appointed executrix. After his death the executrix renewed the insurance policy on the house, which afterwards burned. It was held that the insurance was taken by the executrix in her character as such, but that the proceeds of the policy would not be considered as part of the testator's personal assets, and that they were

affected with the trust for the benefit of the parties interested in the real estate.  *Herkimer* v. *Rice,* cited above, was also a case where the personal property was insufficient to pay the debts and the insurance was procured and paid for by the administrator, and Denio, C. J., said that the balance of the insurance money went to the heir.

[10, 11]  *Plimpton* v. *Farmers' Mut. Fire Ins. Co.,* 43 Vt. 497, 5 A. R. 297, is not an authority to the contrary.  There, the rights of an execution creditor were involved.  The proceedings were wholly *in invitum.*  Here, the insurance was obtained, at least to the amount of the mortgage, pursuant to an obligation assumed by the testatrix, and the balance was properly obtained to protect the contingent interest of the creditors in the property insured.  *Herkimer* v. *Rice, supra.*

[12-14]  The claim of the appellant that the five hundred dollar mortgage was protected by the insurance policy cannot be sustained.  It is true that the language used in the policy is, in one view, susceptible of being interpreted as covering both mortgages.  But when the circumstances are considered, such an interpretation is seen to be impossible.  That mortgage did not call for any insurance; the other one did.  The holders of the five hundred dollar mortgage had no insurable interest in the buildings covered by the policy.  For while great liberality is indulged in in determining the question whether one has anything at hazard in the subject-matter of the insurance, he must have such a right or interest therein as the law will recognize and protect; this must be of such a character that the destruction of the property will have a direct effect upon it, and not a remote and consequential effect upon it.  *Merritt* v. *Farmers' Insurance Co.,* 42 Ia. 11.  Since the five hundred dollar mortgage did not cover the buildings, the holders thereof only had an indirect and remote interest therein.  As we have seen, the five hundred dollar mortgage was paid agreeably to the provisions of the statute, against which no equities can be allowed to prevail. The conclusion is that both these mortgages in the circumstances should have been paid out of the property on which they rested; they ceased to be properly included in the liabilities of the estate, and the devisees took their respective properties *cum onere;* a result which, notwithstanding the common-law rule referred to, we think accords with the real intent of the testatrix.

[15]   The claim that the devise to Job Reynolds is, under the will, entitled to exoneration is without merit.   To warrant that conclusion plain language evidencing such an intention would be required.   We agree with the appellee that the use of the word "absolutely" in the paragraph of the will devising the Gilman Lot and the thirteen acres to him was simply to show that the devise was of a fee rather than of a life estate as in the preceding paragraph.

*Judgment reversed, and cause certified to the probate court for final decree in accordance with the views above expressed.*