RODMAN E. GRISCOM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32750.    Promulgated March 31, 1931.

*Henry Gross, Esq.*, for the petitioner.
*F. R. Shearer, Esq.*, for the respondent.

OPINION.

SMITH: The petitioner brings this proceeding for a redetermination of alleged deficiencies in income tax for the calendar years 1924 and 1925 in the amounts of $17,294.03 and $10,976.92, respectively. His petition alleges error on the part of the respondent (1) in disallowing a loss of $247,600 for 1924 on the sale of certain stock; (2) in disallowing a loss of $74,424 for 1925 on the sale of certain stock; and (3) in disallowing a loss of $18,750 for 1925 on certain stock which became worthless during that year. In each of the foregoing allegations the stock referred to was preferred or common stock of Bertron, Griscom & Company, Inc.

At the hearing the parties hereto submitted the proceeding upon written stipulations covering both the facts and certain new issues raised therein. These stipulations, except for their preamble and signatures, are hereinafter set forth in their entirety.

The facts stipulated and agreed to by the parties are as follows:

1. The petitioner is an individual citizen and resident of Pennsylvania, his address being Land Title Building, Philadelphia, Pennsylvania.

2. The notice of deficiency, a copy of which is attached to the petition and marked "Exhibit A," was mailed to the petitioner October 12, 1927. The petition herein was filed with the Board December 7, 1927.

3. The taxes in controversy are income taxes for the calendar years 1924 and 1925. The deficiencies determined by the Commissioner are $17,294.03 for the year 1924, and $10,976.92 for the year 1925. Only a part of said deficiencies is contested by the petitioner. The respondent is asserting an additional deficiency for each year.

4. The issue between the parties relates to the amount of taxable profits realized by the petitioner from the sale in the taxable years in question of certain securities, part of which were acquired by petitioner by request. In the taxpayer's returns and in the deficiency letter the amount of such profits was computed as the difference between the cost or March 1, 1913 value of the securities sold and the selling price thereof. The petitioner contends that the basis for determining the gain derived from the sale of said securities is their cost or value on July 17, 1923, and that the net income as determined by the Commissioner for the years 1924 and 1925 should be reduced. Respondent contends that the value as of March 1, 1913 is the proper basis but that the fair market value of petitioner's interest in said securities on that date was less than the fair market value of the securities themselves, and that petitioner's net income for said years was consequently understated in the deficiency letter.

5. In the taxable year 1924 the petitioner sold 500 shares of Standard Oil Company of New Jersey common stock, for which he received the sum of $18,672.50, and in the taxable year 1925 the petitioner sold 200 shares of Standard Oil Company of New Jersey common stock, for which he received the sum of $8,168.00. In the taxable year 1925 petitioner sold 164 shares of Pennsylvania Water & Power Company stock, for which he received the sum of $26,994.94. Thirty-four shares thereof were acquired by petitioner since March 1, 1913, at a cost of $3,587.50. The remaining 130 shares of Pennsylvania Water & Power Company stock, as well as the above-mentioned 700 shares of Standard Oil Company of New Jersey common stock were acquired by petitioner pursuant to the terms of the will of Clement A. Griscom. Said Clement A. Griscom died while a resident of the State of Pennsylvania November 10, 1912, and was then the owner of the shares of stock hereinafter mentioned. He left a last will and testament which was thereafter duly admitted to probate in the office of the Register of Wills of Philadelphia County, Pennsylvania. So far as material hereto, said will contained the following provisions:

Third: All the rest, residue and remainder of my estate, real and personal, whatsoever and wheresoever, I give, devise and bequeath to my executors and trustees hereinafter named, and the survivor of them, *In Trust*, to invest and keep invested the principal thereof, and to pay over the net income only thereof to my said wife, Frances C. Griscom, during her life. At her death I direct that the principal of my said residuary estate and any accumulation thereof shall be divided into five (5) equal shares and to be disposed of as follows:

    *        *        *        *        *        *        *

One other equal share thereof I give, devise and bequeath unto my son, Rodman E. Griscom, absolutely.

    *        *        *        *        *        *        *

Fifth: * * * Upon the division of my estate at the death of my wife * * * my surviving trustee may make distribution of my estate in whole or in part, at his election, by division of the assets both real and personal, in kind, or he may sell and convert all or any part of the same into cash, as he may deem best, and divide the proceeds so realized and applicable.

The petitioner was nominated and duly qualified as one of the executors and trustees under the provisions of said will, and was an executor and trustee at the time of the distribution hereinafter mentioned.

6. Frances C. Griscom, the wife of the testator and the life beneficiary under said trust, survived the testator. She was born August 11, 1840, and died February 28, 1923. Thereafter the petitioner as surviving trustee of said estate filed with the Orphans' Court his second and final account showing undistributed assets composed of stocks, bonds, miscellaneous items and cash, including the following:

650 shares Pennsylvania Water & Power Co. stock.

31,000 shares Standard Oil Company of New Jersey common stock.

On the basis of the account the Orphans' Court directed that certain securities be reserved for payment of liabilities of the estate and that the balance of principal be divided into five shares, one of which was awarded to the petitioner. The petitioner and the other parties in interest had elected to take the unconverted securities in kind. Thereupon the trustees caused the unconverted securities to be reappraised and filed with the court a schedule of dis-

tribution in which the above-mentioned stocks were shown to be distributable as follows:

300 shares Standard Oil Company of New Jersey, common, reserved to the trustees as part of a reserve for future liabilities of the estate;

6,140 shares of Standard Oil Company of New Jersey, common, to each of the five beneficiaries, including the petitioner;

130 shares Pennsylvania Water & Power Company to each of the five beneficiaries, including the petitioner.

The 6,140 shares of Standard Oil Company of New Jersey, common, and the 130 shares of Pennsylvania Water & Power Company were actually assigned and distributed to the petitioner on or about July 17, 1923.

7. The fair market value on March 1, 1913, of the above-mentioned stocks was greater than on the date of the death of Clement A. Griscom. The fair market value on March 1, 1913, of the shares sold in 1924 and 1925 was as follows:

500 shares of Standard Oil Co. of N. J., common, at $18.625 _____ $9, 312. 50
200 shares of Standard Oil Co. of N. J., common, at $18.625 _____ 3, 725. 00
130 shares Pennsylvania Water & Power Co., at $65.00 _____ 8, 450. 00

The fair market value of said securities on July 17, 1923, was as follows:

500 shares of Standard Oil Co. of N. J., common, at $32.00 _____ $16, 000. 00
200 shares of Standard Oil Co. of N. J., common, at $32.00 _____ . 6, 400. 00
130 shares Pennsylvania Water & Power Co. stock at $101.00 _____ 13, 130. 00

8. According to recognized experience tables, the fair market value as of March 1, 1913, of a remainder interest in said stocks, subject to the life estate of a person of the age of Frances C. Griscom on March 1, 1913, would be the value of the entire interest therein multiplied by .75157. The fair market value on March 1, 1913, of petitioner's interest in the securities sold in 1924 and 1925, was greater than on the date of the death of Clement A. Griscom, and was as follows:

500 shares Standard Oil Co. of N. J., common _____ $6, 999. 00
200 shares Standard Oil Co. of N. J., common _____ 2, 799. 60
130 shares Pennsylvania Water & Power Co _____ 6, 350. 77

9. In his return for the taxable year 1924 the petitioner reported a profit on account of the sale of 500 shares of Standard Oil Company of New Jersey, common, in the amount of $9,360.00 computed as follows:

Selling price_____ $18, 672. 50
Value March 1, 1913_____ 9, 312. 50

Profit _____ $9, 360. 00

On the return this amount was included in the computation of a capital net loss. In the Commissioner's final determination no adjustment was made on account of the profit reported in the amount of $9,360.00, but the same amount was included in the computation of the corrected capital loss shown in the statement attached to the deficiency letter. If the respondent's contention should prevail, the parties are agreed that the amount of the correct profit on account of said sale should be reflected in a further adjustment of the item of capital loss. If the petitioner's contention should prevail, the amount found to be the correct profit should be added to net income subject to normal and surtax rates, and the amount of the capital loss shown in the deficiency letter should be increased by $9,360.00.

10. In his return for the taxable year 1925 the petitioner reported profits from the sale of 164 shares Pennsylvania Water & Power Company, and 200 shares Standard Oil Company of New Jersey, common, as follows:

| Kind of property | Selling price | Cost | Value Mar. 1, 1913 | Profit |
|---|---|---|---|---|
| 130 shares Pennsylvania Water & Power Co | } $26,994.94 | $3,400 | $8,450 | $15,144.94 |
| 34 shares Pennsylvania Water & Power Co | | | | |
| 200 shares Standard Oil Co. of New Jersey, common | 8,168.00 | | 3,250 | 4,918.00 |

These profits were included in the return in the computation of a capital net loss. In the final determination of the Commissioner no adjustment was made on account of the profits reported from the sale of said stocks, but the same amounts were included in the computation of the item of capital net gain, shown in the statement attached to the deficiency letter. It is agreed that in any event the correct profit from the sale of 200 shares of Standard Oil Company of New Jersey, common, and 130 shares of Pennsylvania Water & Power Company should be reflected in adjustments to capital net gain. The sale of the 164 shares of Pennsylvania Water & Power Company was made August 7, 1925. The 34 shares thereof were acquired by petitioner through the exercise of rights to subscribe thereto, as follows:

19 shares in July, 1923, at a cost of_____ $1,900.00
15 shares in July, 1924, at a cost of_____ 1,687.50
                                                          _____ $3,587.50

If it be held as a matter of law that the 34 shares constituted "capital assets" the correct profit thereon should be reflected in an adjustment to capital net gain; but if said 34 shares were not "capital assets" within the meaning of Section 208 of the Revenue Act of 1926, then the correct profit thereon should be added to net income subject to normal and surtax rates, with a resulting adjustment to capital net gain.

11. The petitioner waives all other issues and assignments of error with respect to the Commissioner's determination for the years 1924 and 1925.

12. The respondent hereby makes claim to the increased deficiencies, if any, resulting from the facts hereinabove stipulated.

Attached to the foregoing stipulated facts is the following stipulation:

It is hereby stipulated and agreed by and between the parties hereto that the United States Board of Tax Appeals may pass upon and determine the issues set forth in the foregoing Stipulation of Facts, to the same extent as though such issues had been raised in the Petition and Answer of the parties.

Subsequently, additional facts were stipulated and agreed to by the parties as follows:

The fair market value on February 28, 1923, (the date of the death of Frances C. Griscom) of the shares of stock sold by the petitioner in 1924 and 1925 was as follows:

500 shares of Standard Oil Co. of N. J., common, at $42.9375_____ $21,468.75
200 shares of Standard Oil Co. of N. J., common, at $42.9375_____ 8,587.50
130 shares of Pennsylvania Water & Power Co., at $107.00_____ 13,910.00

984

The issue, therefore, for our decision is "the amount of taxable profits realized by the petitioner from the sale in the taxable years in question of certain securities, part of which were acquired by petitioner by bequest." The questions arising in connection with the determination of this issue can be more fully appreciated after a short summary of the stipulations, which set forth the facts, the contentions of the parties, and the shifting of their positions from time to time with the development of the issue.

Petitioner's father, Clement A. Griscom, died November 10, 1912, leaving a will which provided that his residuary estate should be placed in trust, the trustees being directed to invest and keep invested the principal, and to pay over the net income *only* thereof to the testator's widow, Frances C. Griscom, during her life. Upon her death, which occurred February 28, 1923, the trustees were directed to divide the residuary estate, and any accumulation thereof, into five equal shares, one of which shares the decedent gave, bequeathed and devised to his son, "Rodman E. Griscom, absolutely." Included in said residuary estate were the identical 130 shares of Pennsylvania Water & Power Company stock and 6,140 shares of Standard Oil Company of New Jersey common stock which were distributed to the petitioner on July 17, 1923. During 1924 and 1925 petitioner sold all his Pennsylvania Water & Power Company stock and 700 shares of the common stock of Standard Oil Company of New Jersey for the sums hereinabove stipulated.

On his returns for 1924 and 1925 the petitioner reported a profit for each year from these sales based on the difference between March 1, 1913, values of the securities sold and their selling price. In computing petitioner's income tax liability for 1924 and 1925 the respondent accepted the March 1, 1913, values of said securities as the proper basis, but, as a result of disallowing losses claimed by the petitioner on transactions in Bertron, Griscom & Company stock, he determined the deficiencies hereinabove set forth. The petitioner duly brought this proceeding to the Board, alleging that the adjustments made by respondent with respect to said Bertron, Griscom & Company stock transactions were erroneous. Thereafter, by stipulation, the petitioner waived the allegations contained in his petition, stipulated the facts hereinabove set forth, and now contends that in view of said stipulations the proper basis for determining gain or loss on the sales of Pennsylvania Water & Power Company stock and Standard Oil Company of New Jersey stock is the cost or fair market value of said stocks on July 17, 1923, being the date said stocks were distributed to him.

The respondent, although originally accepting the March 1, 1913, values of the securities as a proper basis, now contends that in deter-

mining these deficiencies he erred in using said March 1, 1913, values, and that the proper basis for computing gain or loss is the fair market value of the petitioner's *interest* in said securities on March 1, 1913, which is less than the fair market value of the securities themselves. Therefore, the respondent insists that the deficiency letter upon which this proceeding is based understated petitioner's net income for 1924 and 1925.

The issue here presented is controlled by the provisions of section 204 of the Revenue Act of 1924, which section, so far as material hereto, provides as follows:

(b) The basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, shall be (A) the cost of such property (or, in the case of such property as is described in paragraph * * * or (5), of subdivision (a), the basis as therein provided), or (B) the fair market value of such property as of March 1, 1913, whichever is greater. * * *

Subdivision (a) (5) referred to in (b), *supra*, provides as follows:

(a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—
(5) If the property was acquired by bequest, devise, or inheritance, the basis shall be the fair market value of such property at the time of such acquisition. * * *

The stipulated facts show that the property forming the residuary estate, upon the final accounting of the trustee, consisted " of stocks, bonds, miscellaneous items, and cash, * * * " and unless the " miscellaneous items " included real property, it would seem that the residuary estate was composed entirely of personalty. But whether this be true or not, the particular property with which we are concerned is personalty, and therefore, in considering *the nature* and *quality* of petitioner's property right or interest, if any, which he acquired upon his father's death, we will address ourselves to property rights or interests in personalty, tracing generally the development of estates in personalty from feudal tenure limitations to the present legal conceptions.

In the early days of the common law there was no such thing legally possible as an expectant interest in personal property because of the latter's perishable nature, its insignificance as compared to estates in real property, and its movable characteristics as contrasted to the immobility of real property. The compass which guided the early jurists was the protection and control of freehold property and the transmission of hereditary titles, and, therefore, the common law created various estates in realty, so that one might have an immediate interest in enjoyment, while the interest of another or others was postponed as to enjoyment until the falling in

of the preceding estate or estates. The common law at first refused to apply this principle to personalty, but with the persistent growth in importance of personalty, the rigor of the common law has steadily abated, so that today the doctrine of estates or interests in expectancy is applied with much the same force to personal as to real property. Schouler on Personal Property, 5th Ed., p. 194, *et seq.;* *Scott* v. *West*, 63 Wis. 529; 24 N. W. 161, and cases therein cited.

Schouler in his work on Personal Property states that before the close of the seventeenth century it was clearly settled that if a person devise and bequeath goods to A for life, with remainder over to B, it was good limitation to B, and this was true whether the goods, or the use of the goods, were given to A by the terms of the will. In all such cases it was held that A had merely a *life interest*, while B had a *vested interest* by way of remainder, which he could dispose of at his pleasure, and chancery would compel the person to whom courts of law may have awarded the legal interest to make good any such disposition. (P. 198, §138.) The force and weight of this early doctrine of the common law upon dispositions of personalty today is clearly shown by the various cases hereinafter cited or discussed.

In the light of the above discussion, just what property right or interest, if any, did the testator intend his son to take by the terms of his will? The language of testator's will indicates an intention to carve two separate estates from his fee simple ownership of property, the one a life estate for his widow, and the other an estate or interest in remainder for his son. During the lifetime of testator's widow title to the residuary estate was to be vested in the trustees for the specific purpose of carrying out their trust duties, which were to invest and reinvest the trust corpus and to pay over the *income only* to petitioner's mother. Upon her death the trustees were to divide the trust principal, and any accumulation, into five equal parts, one equal part of which testator gave to his son, the petitioner, " absolutely."

The term " absolutely," as used by a testator in disposing of his property has been construed numerous times by the courts of the various States. In *Greenawalt* v. *Greenawalt*, 71 Pa. 487, it was held that " absolute " is not a word used to distinguish a fee from a life estate, but to distinguish a qualified or conditional fee from a fee simple estate. In *Bowles* v. *Shocklee*, 276 S. W. 17, 18, the Court held that " absolutely," without more, suffices to carry the title in fee simple. In *Ryder* v. *Oates*, 173 N. C. 569, 92 S. E. 508, 511, the words " vest absolute " or " absolutely " were held to mean an indefeasible, unconditional, fee simple title. In the latter case the Court cited numerous decisions in which the phrase " absolute property " was held to mean indefeasible. In a devise of property to testator's wife to have " absolutely," the word " absolutely " was held to mean with-

out condition, exception, restriction, qualification, or limitation. *In re Darr's Estate*, 114 Neb. 116; 206 N. W. 2, 3. Where a will provided that an estate in land should vest "absolutely," it was held that the devisee will take a fee. *Fuller* v. *Missroon*, 35 S. C. 314; 14 S. W. 714. In *Barnett* v. *Barnett*, 117 Md. 265; 83 Atl. 160, it was held that the word "absolute" as used in a codicil imported an exclusive control and title in the children. In *Pritchett* v. *Corder*, 105 S. W. 910, it was held that "absolutely" means without limitation or qualification. And in *In re Reynolds Estate*, 94 Vt. 149; 109 Atl. 60, 63, it was held that a devise "absolutely" was "simply to show that the devise was of a fee rather than of a life estate as in the preceding paragraph."

A case particularly in point, in so far as a determination of the nature of the interests or rights received by petitioner under his father's will is concerned, is that of *Williams* v. *Williams*, 73 Cal. 99; 14 Pac. 394. The action in that case was brought to procure a judicial construction of certain provisions of a testator's will relating to a devise or bequest to Percy Williams. Testator's will provided in item four that *three years* after his death, except for named contingencies not here material, distribution of his estate should be made, and specifically provided that, "There shall be vested absolutely in Percy, property or money, fifty thousand ($50,000) dollars." By item six, the testator provided:

The first fifty thousand ($50,000) dollars given to Percy is intended to vest in him absolutely, but the remainder of the estate is only intended for the use and benefit of the children during their respective lives, with the remainder in fee to those herein named, except the fifty thousand ($50,000) dollars absolutely given Percy, which may be given in money or property as desired.

By item thirteen testator provided:

This will is lengthy, but I hope it clearly expresses my purposes, thus: That, with the exception of fifty thousand ($50,000) dollars, the property of my estate is to be "set aside" in and for the benefit of my children, * * *

Testator named the children, provided that the children so named should have the net income of the estate so set aside for them, and provided that legal title should be and remain in the executor.

The questions which the Court was asked to determine were whether the legacy or devise to Percy Williams "is an absolute and vested estate in him, and of which the time of enjoyment only is postponed until distribution, so that on his death, before distribution, intestate, it would pass to his legal heirs, or could now be transmitted by his will or conveyed by deed, as he might desire; or whether the scheme and design of the will was that it was so far conditional as to depend on his survival to the time of distribution, and, if not surviving, whether said $50,000 legacy or devise does not go to and vest in those

designated by the will as devisees in remainder, together with the balance of the interest devised to said Percy." The Court held that so far as the provisions of the will are concerned "there can be no doubt that the interest of Percy in this devise is a *vested* interest in fee, postponed merely in enjoyment. No other legal conclusion can flow from the language used [citing cases]." The Court goes on to say that the law favors the vesting of interests and that since Percy's interest is a vested future interest in fee which will pass by grant, devise, or succession, and one which he could alienate at pleasure, that if he died prior to distribution and without alienation, it would vest in his heirs, devisees, or legatees.

A footnote to the *Williams* case, *supra*, p. 397, states the general rule of law with respect to vested interests, as follows:

> *Will—Vested Interest.* Words postponing the conveyance or division of the property to the expiration of a particular estate, or for a definite period, are presumed to relate to the beginning of the enjoyment, and not the vesting of the estate; *McArthur* v. *Scott*, 5 Sup. Ct. Rep. 652; *Chasy* v. *Gowdry*, (N. J.) 9 Atl. Rep. 580; *Parker* v. *Glover*, Id. 217; *Crosby* v. *Crosby*, (N. H.) 5 Atl. Rep. 907; *Wiggin* v. *Perkins*, Id. 904; *Naundorf* v. *Schumann*, (N. J.) 2 Atl. Rep. 609; *Pond* v. *Allen*, (R. I.) Id. 302; *Dodd* v. *Winship*, (Mass.) 11 N. E. Rep. 588; *Gibbens* v. *Gibbens*, (Mass.) 3 N. E. Rep. 1; *Scott* v. *West*, (Wis.) 24 N. W. Rep. 161; *Rood* v. *Hovey*, (Mich.) 15 N. W. Rep. 525; and the gift will vest at once, though the time for payment or distribution is postponed for the convenience of the fund or property, *Rubencane* v. *McKee*, (Del.) 6 Atl. Rep. 639; *Pond* v. *Allen*, (R. I.) 2 Atl. Rep. 302; *Scott* v. *West*, (Wis.) 24 N. W. Rep. 161; or that some one else may meanwhile have the use or the income of the corpus, *Crosby* v. *Crosby*, (N. H.) 5 Atl. Rep. 907; *Pond* v. *Allen*, (R. I.) 2 Atl. Rep. 302; *Scott* v. *West*, (Wis.) 24 N. W. Rep. 161; *Rood* v. *Hovey*, (Mich.) 15 N. W. Rep. 525; *Davidson* v. *Bates*, (Ind.) 12 N. E. Rep. ——.

The general rule of law above noted with respect to the vesting of interests under a will is followed by the courts of Pennsylvania as shown by the opinions in *In re Groninger's Estate*, 268 Pa. 184; 110 Atl. 465; *In re Edelman's Estate*, 276 Pa. 503; 120 Atl. 457; and *Kidd's Estate*, 141 Atl. 730, decided in 1928. In *In re Edelman's Estate*, *supra*, the testatrix placed her residuary estate in trust, the income therefrom to be paid to her husband during his lifetime, and upon his death the remainder over in equal parts to her children, one equal part thereof being given to the children of a deceased child. The Court held that the beneficiaries took vested interests in remainder at the moment of the testatrix's death, even though their enjoyment of the trust corpus was postponed until the death of the life tenant.

Having in mind the above mentioned cases, many of which contained dispositions of property in a manner similar to that adopted by testator herein, we conclude that petitioner acquired a vested

interest in remainder in the personalty forming the residuary estate at the moment of his father's death, which interest remained vested in him until it ripened into a fee simple title by the death of the life beneficiary, at which time the property in which petitioner held a vested interest ceased to be used for the benefit of another, the use, possession, and enjoyment belonging thereafter to him. The fact that no one could have determined on November 10, 1912, or on March 1, 1913, what specific property would form the residuary estate, is immaterial, because petitioner's rights attached to whatever property remained after payment of claims, specific bequests or legacies, expenses of administration, etc., and even though prior to distribution, the trustees could have sold any portion or all the trust corpus and reinvested the proceeds, the petitioner's rights, nevertheless, remained the same, following the trust corpus through any transitions occurring during the period of the trust, and attaching to the property forming the distributable trust corpus when the life tenancy terminated.

Our conclusion that petitioner acquired a vested interest in *remainder* at the time of his father's death, also disposes of any doubt that might arise as to whether his interest was " property acquired prior to March 1, 1913," within the meaning of section 204 of the Revenue Act of 1924. Such an interest was clearly property to the petitioner in November, 1912, and the language used by the testator in disposing of his residuary estate made petitioner's interest indefeasible, alienable, or devisable regardless of whether he survived the life tenant or predeceased her.

Another question to be considered in determining this issue is whether the legal title to the specific property sold, which vested in possession and enjoyment upon the termination of the life estate, should relate back to the date of testator's death. A similar question has been answered by the Supreme Court in *Brewster* v. *Gage*, 280 U. S. 327. In that case the testator died in 1918, and pursuant to a final decree of the surrogate's court in New York, certain stocks were distributed to the petitioner (Brewster) in 1920. Thereafter, he sold some of the stocks so distributed in 1920, 1921, and 1922, and the question was the amount of income realized on such sales. Brewster computed profit or loss by comparing the selling price with the value at the date of the decree of distribution, but the Commissioner held that the *proper basis for computing* gain or loss was the value at the date of testator's death. The Court, after summarizing the applicable sections of the Revenue Acts of 1918 and 1921, found it necessary to construe the word " acquired " and the phrase " at the time of such acquisition," being the identical language used in section 204 of the Revenue Act of 1924, with which

we are here concerned, in order to determine whether "value of the stock at the time of testator's death or its value on the date of the decree should be used in the calculation." In determining that the date of the testator's death is the basic date for computing gain or loss on the subsequent sales, the Court said:

Upon the death of the owner, title to his real estate passes to his heirs or devisees. A different rule applies to personal property. Title to it does not vest at once in heirs or legatees. *United States* v. *Jones*, 236 U. S. 106, 112. But immediately upon the death of the owner there vests in each of them the right to his distributive share of so much as shall remain after proper administration and the right to have it delivered upon entry of the decree of distribution. *Sanders* v. *Soutter*, 136 N. Y. 97; *Vail* v. *Vail*, 49 Conn. 52; *Cook* v. *McDowell*, 52 N. J. Eq. 351. Upon acceptance of the trust there vests in the administrators or executors, as of the date of the death, title to all personal property belonging to the estate; it is taken, not for themselves, but in the right of others for the proper administration of the estate and for distribution of the residue. The decree of distribution confers no new right; it merely identifies the property remaining, evidences right of possession in the heirs or legatees and requires the administrators or executors to deliver it to them. The legal title so given relates back to the date of the death, *Foster* v. *Fifield*, 20 Pick. 67, 70; *Wager* v. *Wager*, 89 N. Y. 161, 166; *Thompson* v. *Thomas*, 30 Miss. 152, 158.

*Petitioner's right later to have his share of the residue vested immediately upon testator's death. At that time petitioner became enriched by its worth which was directly related to and would increase or decline correspondingly with the value of the property. And, notwithstanding the postponement of transfer of the legal title to him, Congress unquestionably had power and reasonably might fix value at the time title passed from the decedent as the basis for determining gain or loss upon sale of the right or of the property before or after the decree of distribution.* And we think that in substance it would not be inconsistent with the rules of law governing the descent and distribution of real and personal property of decedents to construe the words in question to mean the date of death.

Undoubtedly the basis for the ascertainment of gain or loss on the sale of real estate by an heir or devisee is its value at the time of decedent's death. That is "the time of such acquisition." The decree of distribution necessarily is later than, and has no definite relation to, the time when the real estate passes. And generally specific bequests are handed over to the legatees soon after the death of the testator and such property may be and often is sold by them prior to the entry of the decree for final distribution. *In such cases gains or losses are to be calculated under these Acts on value at the time of death. No other basis is or reasonably could be suggested.*

There is nothing in either of the Acts or in their legislative history to indicate a purpose to establish two bases—(1) value of real estate and specific bequests at time of death and (2) value of other property at date of decree. The rule that ambiguities in tax laws are to be resolved in favor of taxpayers has no application here because it is impossible to determine which basis would impose a greater burden. And neither construction is to be preferred on the ground that the other would raise serious question as to constitutional validity. *The generality of the words used in both Acts indicates intention that the value at the time of death of the decedent was to be taken as the basis in all cases.* (Italics supplied.)

The above language of the Supreme Court might well be paraphrased and applied with equal finality to the issue here presented, particularly that portion thereof which states that petitioner's right to have his share of the residue at a later date vested immediately upon testator's death, that at that time he became enriched by its worth, which was directly related to and would increase or decline correspondingly with the value of the property, that notwithstanding the postponement of transfer of the legal title to him, Congress unquestionably had power and reasonably might fix *value* at the time title passed from the decedent as the basis for determining gain or loss *upon sale of the right* or *of the property* before or after the decree of distribution, that there is nothing in the Revenue Act to indicate one basis for realty and another for personalty, rather the generality of the words indicates that value at the date of testator's death should be taken as the basis in all cases, and finally, that the legal title given by the testator relates back to the date of his death. It is our opinion, therefore, that the period during which the residuary trust existed, is so analogous to the period of administration, during which time administrators or executors hold a decedent's estate in trust for the proper administration of the estate and for distribution of the residue, that the rule laid down in the *Brewster* case is applicable to the present situation of an intervening life estate with remainder over. See also *In re Edelman's Estate, supra; Scott* v. *West, supra; McArthur* v. *Scott*, 113 U. S. 340; *Potter* v. *Couch*, 141 U. S. 296.

Having established March 1, 1913, as the basic date, because value at that time is stipulated to be greater than value at the time of testator's death, we must next determine whether the value of the securities themselves, or the value of petitioner's vested remainder interest therein, since they formed a part of the trust corpus, should be used as the basis in computing gain or loss. Respondent contends that the stipulated value of petitioner's remainder interest should be used as a basis, but with this contention we are unable to agree for the reasons hereinafter set forth.

In the first place, it is perfectly clear that during the period of the life estate petitioner held steadfastly to his remainder interest, and, so far as the record is concerned, never at any time entertained a thought of selling such interest. Obviously, if he had sold his interest, the value thereof would be the proper basis for computing gain or loss. But he did not sell an interest. He sold the fee simple title to the securities themselves, and if due weight is to be given to the Supreme Court's opinion in *Brewster* v. *Gage, supra*, then his title to the things sold, namely, the securities, must relate back to November 10, 1912. Therefore, the value of the securities on March 1, 1913,

is the basis to be used in computing gain or loss on the subsequent sales.

Objection may be raised to this determination upon the ground that a vested remainder *interest* in the residue is distinctly different property from a fee simple ownership of the specific property after distribution. We think this objection is met by the fact that petitioner was entitled at all times during the life tenancy to his pro rata share of the residuary estate, regardless of what time the life tenant died. Her death might have occurred before or after February 28, 1923, but at whatever date this event occurred, the petitioner's right remained the same, although its value would appreciate or depreciate with the length of the postponement. In other words, petitioner's interest was such that at any time upon the falling in of the preceding estate he could step in and take possession of his proportionate part of the residuary estate. Such a vested interest is sufficient in our opinion to support the chain of title running from the date petitioner acquired his interest, through the date of vesting of possession and enjoyment, until he parted with all interest therein by sale. It is at the time of sale that the first taxable transaction occurs, which results in gain or loss, and in determining the amount thereof, we must trace the securities back through the estates carved out by the testator to their value at the time of his death.

We believe that it was recognition of this very fact which moved the Circuit Court in *Brewster* v. *Gage*, 30 Fed. (2d) 604, to incorporate the following language in its opinion:

It surely was not the intent of Congress that the acquisition of a mere legal title should completely wipe out or render untaxable the gain which had been acquired by the equitable ownership, and which was, in fact, realized upon the sale made when the date of distribution arrived. Moreover, it would be an unfortunate construction, which is not demanded by the statute, that would place it within the power of personal representatives and the real owners, namely, the legatees or distributees, to defer distribution in order to escape tax. This should be avoided. Frequently the personal representatives and the beneficiaries are the same persons or members of the same family, and the temptation would be open, where there is a period of rapidly increasing values, to defer distribution until, in the judgment of all concerned, the peak in the market had been reached, so that thereafter sales of the distributed property would register little or no profit and perhaps losses. * * *

We recognize that our determination of this issue is contrary to the doctrine announced by the Board in *F. W. Matthiessen, Jr.*, 2 B. T. A. 921; *Alice Fisher Foster*, 7 B. T. A. 1137; *Charles E. Moser et al.*, 12 B. T. A. 672; *Nellie B. McGee*, 13 B. T. A. 1181; and other related cases, which are cited as authorities for the proposition that the basic date in computing gain or loss in similar situations is the date of distribution. The cases following this doctrine were decided by the Board prior to the Supreme Court's decision in *Brewster* v. *Gage*, 280 U. S. 327, and since the promulgation of that opinion

the *McGee* case was reversed by the Circuit Court of Appeals for the Ninth Circuit in *Commissioner* v. *McGee*, 38 Fed. (2d) 1013, by stipulation of the parties, and the petition for review in the *Moser* case, which was entitled *Moser et al.* v. *Commissioner*, was dismissed on April 29, 1930, upon stipulation of the parties.

The first decision of the Board which we have found indicating a departure from the doctrine of the *Matthiessen* case is *Benjamin G. Chapman, Jr., Executor*, 19 B. T. A. 105, wherein we had for determination the question of when stock dividends were *acquired* for the purpose of computing gain or loss on the subsequent sale thereof; that is, at the date of receipt by the trustees, or at the date of distribution to the life tenant pursuant to a court decree ordering the trustees to distribute said stock dividends as income to the life beneficiary. The petitioner in the *Chapman* case was executor of the estate of Fannie H. Higbee, one of the life beneficiaries under a trust created by the will of her uncle. The petitioner contended that the life beneficiary acquired the stock dividends in question when they were actually distributed to her by the trustees, citing as authority for his position the *Matthiessen, Foster*, and *McGee* cases, *supra*, and the decision of the Court of Claims in *Matthiessen* v. *United States*, 65 Ct. Cls. 484. We held, however, that petitioner's contention could not be sustained in view of the Supreme Court's opinion in the *Brewster* case, stating in the course of our opinion that the decree of the Court ordering the distribution:

* * * created no new property right. It merely declared and defined rights that then and had theretofore existed, rights that belonged to Fannie H. Higbee, which were vested in her by the will of her uncle, William R. Pye, and which became effective, in so far as the stock dividends involved herein were concerned, when the dividends were received by the trustees. Under the construction placed upon the will by the Circuit Court, Fannie H. Higbee had, as a beneficiary of the trust created by the will, the right to have one-half of the stock dividends conveyed to her as and when they were paid to the trustees. That she did not assert her right or attempt to enforce it until later, and did not actually receive the stock until 1918, does not alter the situation. The right nevertheless existed. In view of the decision of the Supreme Court of the United States in *Brewster* v. *Gage, supra*, we are constrained to hold that Fannie H. Higbee acquired her share of the stock dividends in question, within the meaning of the Revenue Acts of 1921 and 1924, at the dates they were received by the trustees.

We have examined the cases of *J. S. F. Crayton*, 11 B. T. A. 1375; *Henry J. Faulkin et al.*, 13 B. T. A. 1200; *Emily Allen Elfreth*, 15 B. T. A. 147; *M. M. Jackson, Executor*, 18 B. T. A. 875; and *Pierre S. Du Pont*, 18 B. T. A. 1028, cited by respondent, but in view of our discussion of the law, and the decision which we have reached, we believe that it is unnecessary to go into these cases, except to point out that the decisions therein are not determinable of the present issue.

We hold, therefore, that the amount of profit realized by the petitioner from the sale of 500 shares of Standard Oil Company of New Jersey common stock in 1924 is the difference between the selling price and the value of the securities on March 1, 1913; and likewise with respect to the 200 shares of Standard Oil Company of New Jersey common stock sold in 1925.

The amount of profit realized by petitioner upon the sale of Pennsylvania Water & Power Company stock in 1925 is the difference between the selling price of the 164 shares, and the value of the 130 shares on March 1, 1913, plus the cost of the 34 shares acquired by purchase through the exercise of subscription rights in 1923 and 1924.

Any question of capital net gain or capital net loss arising out of these sales in 1924 and 1925 should be governed by the stipulation of the parties with respect thereto, except as to the 34 shares of Pennsylvania Water & Power Company stock, which were acquired by purchase as follows: 19 shares in July, 1923, at a cost of $1,900; 15 shares in July, 1924, at a cost of $1,687.50. With respect to these particular shares the stipulation reads as follows:

If it be held as a matter of law that the 34 shares constituted "capital assets" the correct profit thereon should be reflected in an adjustment to capital net gain; but if said 34 shares were not "capital assets" within the meaning of Section 208 of the Revenue Act of 1926 [1924], then the correct profit thereon should be added to net income subject to normal and surtax rates, with a resulting adjustment to capital net gain.

Capital assets are defined by section 208 (a) (8) of the Revenue Act of 1924 as " property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business." Since the 34 shares, together with the 130 shares of Pennsylvania Water & Power Company stock were sold on August 7, 1925, it follows that the 19 shares acquired by purchase in July, 1923, constituted capital assets of the petitioner within the meaning of section 208 (a) (8), but the 15 shares acquired in July, 1924, are not capital assets for the reason that they were held less than two years from the date of sale.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

Seawell, dissenting: At common law a remainder in real estate could not be created without a particular estate to support it. A

freehold could not pass without livery of seisin, which must operate immediately or not at all. But it was otherwise in reference to personalty for, as Mr. Blackstone says, " it was considered as a mere contract to take effect in the future." The case under consideration is more nearly related to that tenure under the Statute of Uses called *fidei commissum*, which was usually created by will and was the disposal of property to one in confidence that he should convey or dispose of its profits at the will of another—the dim beginnings of our law of uses and trusts.

These tenets of the ancient law of property, set forth with much commendable erudition in the majority opinion, seem, however, unnecessary and out of place in a tax case under taxing statutes such as the heart of Blackstone or Coke or Littleton never conceived. Title to the property from which the income sought to be taxed in this case was derived is in no wise in dispute; and the will under which the property was bequeathed was never contested and under it there was no suggestion of lapsed legacies either in the pleadings or in the evidence on the trial. The solution of the main question here involved does not seem to be made less difficult by the addition of these burdens.

And what is this main question here involved? It is this, when did this petitioner *acquire* under his father's will, the securities which he sold in 1924, and 1925? The statute, section 204 (a) (5) of the Revenue Act of 1924, points the pertinency of this inquiry:

SEC. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

*       *       *       *       *       *       *

(5) If the property was *acquired* by bequest, devise, or inheritance, the basis shall be the fair market value of such property at the time of such *acquisition*. * * * (Italics supplied.)

To acquire property is not synonymous with to vest title to property, although closely allied to it. In a taxing statute obviously something more than a vested title is requisite. A title which would support an action at law for possession falls short of acquired property. One who purchases from the legal owner the legal title to an automobile which has been stolen has a good vested title to it, but must walk until the possession of the automobile is recovered. And titles do not always vest completely at once or by one act. Title when complete may have relation back to something done in the beginning which perfects it *ab initio* and makes secure rights and reduces to possession that which previously was a bare right only without possession. (*Brewster* v. *Gage*, 280 U. S. 327.) Possession, at least constructively, is necessary to full property rights in personalty. (Bouvier's Law Dictionary, subject, Possession.)

The steps in the acquisition of the securities sold by the petitioner in 1924 and 1925 may be thus enumerated: First, his father made a will and then died; then the will was probated and put to record and trustees under it were appointed; then the petitioner had an expectancy or inchoate right to future acquisition, but if he had acquired anything up to that time it did not include all of that which he afterwards sold. (*Tyler* v. *United States*, 281 U. S. 497.) It could not then be known what he would acquire in the end, for the trustees could sell and reinvest; fire, flood and earthquake might destroy it all before his mother should pass away; and even then the trustees could sell and convert into money any securities or other property of the residuary estate not previously disposed of, leaving the ultimate possession and property under the vested right still precarious to the petitioner. It was only when his mother died and the property was divided by the trustees into five parts and one part handed over to the petitioner that he, or any one, could know what he *acquired*. Suppose his *title* did then revert to the original filing of the will? Suppose he could at any time have sold his expectancy even before his mother's death? He did not sell his expectancy and we are not concerned with what he might have done. Our concern is with stern facts and realities, and verities are not coerced by speculative possibilities. (*Weiss* v. *Stearn*, 265 U. S. 242.) Surely, before the death of his mother he could not have sold the fee simple or absolute title to the securities which he did sell in 1924 and 1925, for he had not then acquired that title.

Upon a consideration of the whole case, and for the reasons pointed out, I am led to conclude that the correct basis for establishing gain to the petitioner in the transaction under review is the value of the securities he sold at the time he acquired them, to wit, at the time of the death of his mother.

TRUSSELL and VAN FOSSAN agree with this dissent.