# Bache's Estate.

*Wills—Construction—Vested remainders—Contingent remainders—Petition for sale—Price Act of April 18, 1853, P. L. 503—Act of June 14, 1897, P. L. 144—Jurisdiction, O. C.*

1. A devise of real estate to one for life with remainder to the testator's heirs, vests the remainder in those who answer such description at the time of his death, unless the will affords clear and unequivocal evidence to the contrary; and it is immaterial that the life tenant is one of the class who will take the remainder. The law favors vested rather than contingent estates and unless it clearly appears from the context or the circumstances of the case that a contingent interest was intended, the remainder will be regarded as vesting at the death of the testator and not at the expiration of the life tenancy.

2. Testator by will devised as follows: "I give, devise and bequeath unto my daughter L. for and during the term of her natural life, the house and lot with barn and vacant lot comprising the homestead where I now reside.......And upon her death I give and devise the real estate aforesaid unto my lineal heirs, share and share alike, provided, however, that in case the said heirs shall be in more than one class they shall take per stirpes and not per capita. I further will and direct that in case all of my daughters if living, or such as may be living and the issue of those who are dead, should agree that a sale of the vacant lot...... should be advisable, and my said daughter should signify her assent to such sale by joining in the deed, then the same shall be sold, the money invested, and the income thereof be paid annually to my said daughter during her life, and at her death the said money to be distributed to my lineal heirs aforesaid as above provided in case of the land remaining unsold." Testator left three daughters, two of the daughters, L. and A., petitioned the Orphans' Court for an order to sell the real estate under the Price Act, as amended by the Act of June 14, 1897, P. L. 144, the petition setting out the will in full. All three daughters were sui juris. The court ordered a sale of the property. *Held,* the petition disclosed a life tenancy in the daughter L., with remainder vested in the three daughters on the death of the testator, and the court erred in overruling a demurrer to the petition.

3. In such case, the fact that the taxes on the property are in arrear, that the tsetator's provision for keeping up the property has failed, and that the owners of the remainder are largely in

debt and their creditors joined in the application for a sale, is not ground for ordering a sale.

Argued May 4, 1914. Appeal, No. 44, Jan. T., 1914, by Nellie Bache Graves, from decree of O. C. Tioga Co., May T., 1913, No. 28, ordering sale of real estate and appointing trustee for same in estate of John N. Bache, deceased. Before FELL, C. J. BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ. Reversed.

Petition for sale of real estate under Price Act. Before CAMERON, P. J.

The facts appear by the opinion of the Supreme Court.

The court entered a decree ordering the sale of the real estate in question and appointed a trustee to conduct the sale. Nellie Bache Graves appealed.

*Error assigned,* among others, was the decree of the court.

*Paul J. Edwards* and *Andrew B. Dunsmore,* for appellant, cited: Westhafer v. Koons, 144 Pa. 26; Smith v. Townsend, 32 Pa. 434; Heffner's App., 119 Pa. 462; Beck's Est., 225 Pa. 578; Freeman's Est., 181 Pa. 405; Spencer v. Jennings, 114 Pa. 618.

*S. F. Channell,* with him *Edward H. Owlett* and *George W. Merrick,* for appellee, cited: Sheets's Est., 52 Pa. 257; Mulliken v. Earnshaw, 209 Pa. 226; Wood v. Schoen, 216 Pa. 425; Anderson's Est., 243 Pa. 34; Shreiner's App., 53 Pa. 106.

OPINION BY MR. JUSTICE MESTREZAT, July 1, 1914:

John N. Bache died April 1, 1905, testate, seised of certain real estate in the Borough of Wellsboro, Tioga County, and leaving surviving him three daughters: Louise M. Truman, Anna B. Truman and Nellie B.

Graves. By his will he devised, inter alia, as follows:
"I give, devise and bequeath unto my daughter, Louise
M. Truman, for and during the term of her natural life,
the house and lot with barn and vacant lot comprising
the homestead where I now reside......And upon her
death I give and devise the real estate aforesaid unto
my lineal heirs, share and share alike, provided, how-
ever, that in case the said heirs shall be in more than
one class they shall take per stirpes and not per capita.
I further will and direct that in case all my daughters
if living, or such as may be living and the issue of those
who are dead, should agree that a sale of the vacant lot
......should be advisable, and my said daughter, Lou-
ise M. Truman, should signify her assent to such sale
by joining in the deed, then the same shall be sold, the
money invested, and the income thereof be paid an-
nually to my said daughter, Louise M. Truman, during
her life, and at her death the said money to be distrib-
uted to my lineal heirs aforesaid as above provided in
case of the land remaining unsold."

On May 31, 1913, Louise M. Truman, Anna B. Tru-
man and A. A. Truman, her husband, presented their
petition to the Orphans' Court of Tioga County praying
for an order to sell the said real estate under the Act of
April 18, 1853, P. L. 503, commonly known as the Price
Act, as amended by the Act of June 14, 1897, P. L. 144.
The petition sets forth, inter alia, the devise and a de-
scription of the property, and avers that the property
is becoming dilapidated and going into decay; that an
offer had been made to purchase it at private sale for
the sum of $5,000 subject to the tax liens which was a
better price than could be obtained at public sale; that
it would be for the interest of all parties to sell the
same; that the sale might be made without injury or
prejudice to any trust, charge or purpose for which
the same is held; and that the same might be done with-
out violation of any law which may confer an immunity
or exemption from sale or alienation. Nellie Bache

Graves, the other daughter, and her husband demurred to the petition on the ground that it did not set out facts sufficient to give the court jurisdiction under the act of assembly. The demurrer was overruled, and Mrs. Graves filed an answer averring, inter alia, the same reason why the prayer of the petition should not be granted. The learned court below held the answer insufficient and entered a decree granting the prayer of the petition. Nellie Bache Graves, the respondent, took this appeal.

The real estate in question, as will be observed, was devised to Louise M. Truman for life with remainder to the testator's lineal heirs who, if in more than one class, should take per stirpes and not per capita. His three daughters were the testator's only lineal heirs at the time of his death, and they are still living. It is clear, therefore, that under this devise Louise M. Truman took a life estate and she and her two sisters took the remainder in fee. It is settled by a long line of decisions in this State that a devise of real estate to one for life with remainder to the testator's heirs vests the remainder in those who answer such description at the time of his death unless the will affords clear and unequivocal evidence to the contrary; and it is immaterial that the life tenant is one of the class who will take the remainder: Stewart's Est., 147 Pa. 383; Buzby's App., 61 Pa. 111. The law favors vested rather than contingent estates and unless it clearly appear from the context or the circumstances of the case that a contingent interest was intended, the remainder will be regarded as vesting at the death of the testator and not at the expiration of the life tenancy. In the present case the testator expressed his intent in legal and technical language which will permit of but one interpretation. The first taker, one of his three daughters, unquestionably took a life estate. It is so expressed in the will. The remainder is given in equally clear and certain language, and the presumption is that it vested in the testator's lineal

heirs at his death and not at the expiration of the particular estate. There is nothing in the will to indicate that the testator intended the vesting of the remainder should be postponed until the death of the life tenant. The presumption is against such intention, and it is strengthened by the reasonable probability that he preferred his estate should go to his daughters rather than to more remote descendants. The subsequent clause of the will permitting the sale of the vacant lot clearly discloses that it was the testator's intention the remainder should vest at his death, as it provides that the vacant lot may be sold with the consent of his daughter, Louise, the life tenant, if all his daughters should agree to the sale, which necessarily implies that the sale should take place during the existence of the life estate, and it is obvious that such sale would not pass the fee as the testator intended unless the remainder vested at his death. That provision of the will was not intended to change the preceding devise, as it directed that the proceeds of sale be applied "as above provided in case of the land remaining unsold." In fact the provision was simply surplusage, because the fee simple title to the vacant lot being in the three daughters, they could have conveyed it by their deed regardless of the testamentary provision made for the sale of the property.

The devise having vested the estate in fee in the three daughters at the death of the testator subject to the life estate of one of the daughters, the Act of 1853 and its supplements did not confer on the Orphans' Court power to order a sale of the premises. As above suggested the three daughters were the owners in fee of the entire property, and they could sell or dispose of it as they saw proper. The life tenant could have disposed of her interest as such and also her interest in the remainder without the consent of her two sisters. Her sisters could have disposed of their interests without consulting the life tenant. The testator's direction to sell if all the interested parties should concur was, therefore, of

no effect whatever, and conferred no power upon his daughters which they did not possess by virtue of the prior devise.

We are not clear as to the ground upon which the learned court based its authority to award an order of sale under the Price Act. The opinion says: "If the will of the testator creates a contingent remainder, we have seen it is within the provisions of the Price Act. If it creates a vested remainder liable to open and let in after-born children, it is also within the acts cited." It is too clear for argument that the will did not create a contingent remainder, but vested the remainder in the lineal heirs at the death of the testator and in possession at the death of the life tenant. As pointed out above the persons in whom the estate vested were those who answered the description of lineal heirs at the death of the testator, and they were the three sisters. They were in being and had the immediate right to the possession upon the determination of the particular estate. Had that estate been determined by the death of the life tenant during the life of the testator the remaindermen would have taken possession at his death. The event on which the remainder was limited, the expiration of the particular estate, was bound to happen, and the remainder vested at the death of the testator in his lienal heirs.

The learned court also seemed to think that the remainder was vested but liable to open and let in after-born children, and that, therefore, the court had jurisdiction under the Price Act to order a sale of the property. It is true that where there is a devise of a life estate followed by a remainder to a class of persons, some or all of whom are unborn, the remainder is contingent until the birth of a member of the class in whom it vests immediately subject to open to let in all members of the class who may thereafter be born during the continuation of the particular estate. The rule is stated in Smith on Executory Interests, quoted by Mr. Justice

GREEN, in Keller v. Lees, 176 Pa. 402, 407, as follows: "Where real estate property is limited by way of a remainder to a class of persons, some or all of whom are unborn; if any of them come in esse before the determination of the particular estate, the property will vest in such person or persons subject to open and let in the other members of the class who happen to come in esse before the determination of the particular estate." Had this devise been to the life tenant and the remainder to her children or to the children of another, the remainder would have been contingent until the birth of a child in whom it would have vested immediately subject to let in after-born children. The learned court failed to note the distinction between such a devise and the one under consideration. Here, the devise was to the daughter for life with remainder to the testator's lineal heirs, and whoever answered to such description at the death of the testator, when the will took effect, was entitled to the remainder. The lineal heirs were the three daughters, and no other person could, at the vesting of the estate or thereafter, take as a remainderman. If either of the three daughters had died prior to her father, leaving issue, that issue by the express provisions of the will would have taken their parent's share of the remainder. During the life of the daughters their children were not entitled to any part of the remainder; if either of the daughters died after the death of the testator her children took through her and her share of the remainder and not directly from the testator. During the continuance of the particular estate either daughter can dispose of her interest in the remainder which will prevent it vesting in her children in possession at the death of the life tenant. The remainder vested at the death of the testator in the parties to whom it was devised, to wit, the testator's lineal heirs who were his three daughters, and had either daughter died during the continuance of the life estate leaving children, the remainder would not have opened to let them in, as they were not

the devisees of their grandfather and hence took no interest in the property by his will.

In view of the fact that the petition discloses a life tenancy in one daughter and the remainder vested in the three daughters on the death of the testator, there is nothing in the petition which confers jurisdiction on the court below to order a sale of the property under the Price Act. The three daughters, owners of the entire estate, are all sui juris and able to contract for themselves, and it would, therefore, be a deprivation of a constitutional right for the court, through its decree, to sell the property. Nor, as the learned counsel for the appellees seem to think, is it ground for ordering a sale that the taxes on the property are in arrear, that the testator's provision for keeping up the property has failed, and that the owners of the remainder are largely indebted and their creditors join with the appellees in the application for a sale. Under the facts of the present case, these matters will not aid an application for an order to sell under the Price Act. The learned court correctly held that "the attitude of the creditors towards the application for an order of sale could not give the court jurisdiction." If the creditors desire to enforce their claim they can do so in the Common Pleas by obtaining a judgment and selling the interest of the judgment debtor in the premises. If, as appears by the opinion of the court below, the remaindermen are indebted far beyond the value of the property, they should stop litigation and dispose of the property amicably and apply the proceeds to the payment of the indebtedness. The three sisters are the absolute owners of the property and they can dispose of it as they please, or either can dispose of her interest as she may desire. The rights of the parties in the property having been judicially determined, their counsel will no doubt lend assistance in preventing further litigation which would result only in adding unnecessary costs and expenses for their clients to pay.

The decree is reversed at the costs of the appellees.