WILLIAM HUGGETT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 45831.   Promulgated November 6, 1931.

*James C. Peacock, Esq.,* for the petitioner.
*Eldon McFarland, Esq., Arthur Clark, Esq.,* and *W. H. Trigg, Esq.,* for the respondent.

OPINION.

ARUNDELL: Muriel D. Huggett, wife of the petitioner, was named as a remainderman in the will of her grandmother, who died in 1912, subject to a life estate in Mrs. Huggett's mother. On the termination of the life estate in 1924, securities forming a part of the original estate were distributed to Mrs. Huggett as remainderman in accordance with the will. These same securities (disregarding change in form following reorganization) were sold by Mrs. Huggett in 1925 and 1926 for more than their March 1, 1913, value and more than their value at the time of distribution in 1924. Petitioner concedes that, for the purposes of this case, the conversion of the original stock into new preferred and common stock may be disregarded.

Section 204 of the Revenue Act of 1926 provides that the basis for determining gain or loss on the sale of property acquired by bequest, devise, or inheritance shall be the fair market value at the time of acquisition, or, if acquired before March 1, 1913, the value at acquisition or March 1, 1913, value, whichever is greater.

Petitioner claims that the date of acquisition is the date of termination of the life estate when the remainder ripened into a fee, at which time, as stipulated, the stock subsequently sold was worth

$1,065.59 per share. Respondent originally held that the basic value was the March 1, 1913, value of the stock, namely, $465.90 per share. By amended answer respondent now claims that the proper basis is the March 1, 1913, value of Mrs. Huggett's vested remainder, which, translated into stock value, amounts to $195.45 per share.

The facts in this proceeding are on all fours with those in *Rodman E. Griscom*, 22 B. T. A. 979. In that case we held as set forth in the syllabus that:

The basis to be employed in determining gain or loss on the sales was the fair market value of the shares on March 1, 1913.

Petitioner in the present case asks that we reconsider our holdings in the *Griscom* case, one of the grounds being that *Brewster* v. *Gage*, 280 U. S. 327, which we relied on as a precedent, is inapplicable, because in the *Brewster* case there was no intervening life estate.

The parties are agreed that upon the death of the testatrix Mrs. Huggett acquired a vested remainder. This seems to be in accordance with the law of Pennsylvania. *In re Bache's Estate*, 246 Pa. 276; 92 Atl. 304; *In re Walker's Estate*, 277 Pa. 444; 121 Atl. 318; *Houston's Estate*, 276 Pa. 330. Mrs. Huggett's title therefore relates back to the date of death of the testatrix. This principle of law, applicable alike to this case and the Brewster case, was a major premise in the decision of the latter. While it is pointed out that there is a difference between the passing of real estate and personalty, the conclusion is reached that despite the difference " the legal title " to the personalty " relates back to the date of death " as in the case of real estate. It is then pointed out that in the case of real estate and specific bequests of personal property " undoubtedly the basis * * * is its value at the time of decedent's death." Upon these premises the court holds that the same basis should apply alike to real estate, specific bequests of personal property and other property. The same analogy may be made in the present case with the same result. The fact of an intervening life estate does not destroy or even change the source of the remainderman's title. The doctrine of relation back holds good whether or not there is an intervening estate. *Coolidge* v. *Long*, 282 U. S. 582, involved trust deeds under which income from the trust property was reserved to the settlors for life, and upon the death of the survivor of the settlors the principal was to be divided among their sons. On the death of the survivor the State attempted to impose a succession tax under a statute enacted after the execution of the trust deeds. The Supreme Court held that the gift to the sons was completed by the trust deeds prior to the enactment of the taxing statute, saying in part:

By the deed of each grantor one-fifth of the remainder was immediately vested in each of the sons subject to be divested only by his death before the death of the survivor of the settlors. It was a gift *in praesenti* to be possessed and enjoyed by the sons upon the death of such survivor. * * * The provision for the payment of income to the settlors during their lives did not operate to postpone the vesting in the sons of the right of possession or enjoyment.

\* \* \* \* \* \* \*

The rights of the remaindermen, including possession and enjoyment upon the termination of the trusts, were derived solely from the deeds. The situation would have been precisely the same if the possibility of divestment had been made to depend upon the death of a third person instead of upon the death of the survivor of the settlors.

\* \* \* \* \* \* \*

The fact that each son was liable to be divested of the remainder by his own death before that of the survivor of the grantors does not render the succession incomplete. The vesting of actual possession and enjoyment depended upon an event which must inevitably happen by the efflux of time, and nothing but his failure to survive the settlors could prevent it. * * * Succession is effected as completely by a transfer of a life estate to one and remainder to another as by a transfer in fee.

Another objection made by petitioner to following *Brewster* v. *Gage*, is that inequalities in taxation may result where, for example, blocks of stock having widely different values at the date of testator's death are of equal value at the time the remaindermen come into possession. We find, upon examination of the taxpayer's brief filed in the Supreme Court in *Brewster* v. *Gage*, that much the same argument was presented there. It was apparently thought by the court that the suggested inequalities were not a sufficient reason for disturbing the basis long used by the Commissioner.

It was also argued by petitioner that in cases of this kind there has been no long established ruling of the Commissioner's office. We find, however, that in Solicitor's Opinion 35 (C. B. 3, p. 50) the rule is laid down with respect to real estate that the basis is the fair market value of the rights of the remaindermen at the time they vested, or March 1, 1913, value, if they vested prior thereto. That ruling was promulgated in 1920 and as far as we know it has been the rule of the Commissioner's office all during the intervening eleven years. While that ruling purported to apply only to real estate, it has not been brought to our attention that any contrary ruling prevailed with respect to personalty. Since the promulgation of I. T. 1622 (C. B. II-1, p. 135) in 1923 the same ruling as in Sol. Op. 35 has been applied to personal property.

We accordingly hold, as in the *Griscom* case, that March 1, 1913, is the basic date.

The respondent contends that we erred in the *Griscom* case in holding that the basic value is that of the stock rather than the

674

remainderman's interest in the property. The petitioner claims that what was sold was stock, hence the stock itself must be valued. Respondent's argument is that it was an interest in property that was acquired by will and an interest in property that was sold and that, therefore, it is the interest that must be valued and used as a basis.

It is, of course, well established that a remainderman under a will has the right to any increment in value that may inure to the corpus during the existence of the life estate. *Gibbons* v. *Mahon*, 136 U. S. 549. Such increment when realized is subject to tax as income. Had the trustee sold at a profit the gain realized would be subject to tax in his hands. And there is nothing in the revenue act that exempts a gain merely because its realization is postponed from the trustee to the remainderman. Only the gift itself is exempt (sec. 213 (b) (3), Revenue Act of 1926), and this is the property acquired at the death of the testator. It is, we think, also evident that the sale of a remainder interest for more than its value at testator's death would give rise to gain taxable to the remainderman. Suppose that, in the case of a tenancy for years with remainder over, the remainderman sells on the last day of the intervening estate when his remainder is worth as much as the fee. In such case there would be a taxable gain of the difference between the value of the remainder at the testator's death and the selling price. But if, in such a case, he sold on the following day, when his remainder had ripened into a fee, under petitioner's theory there would be no taxable gain because the property was not " acquired " by the remainderman until the termination of the preceding estate. Plainly such an incongruous result can not be the intent of the revenue act. In the opinion of the Circuit Court of Appeals in *Brewster* v. *Gage*, 30 Fed. (2d) 605, it is said:

It surely was not the intent of Congress that the acquisition of a mere legal title should completely wipe out and render untaxable the gain which had been acquired by the equitable ownership, and which was, in fact, realized upon the sale made when the date of distribution arrived.

As above pointed out and as held in the *Griscom* and *Brewster* cases, the time of acquisition within the meaning of the taxing act is the date of the testator's death. A property right was then acquired by the remainderman which was as perfect at that time as at the termination of the life tenancy. *Nichols* v. *Levy*, 5 Wall. 433. When the sales were made in the taxable years the remainderman thereby parted with the identical rights vested in her by the will of the testatrix. Nowhere along the line was there any conversion of property rights which permits of a revaluation or new basis for gain or loss purposes.

Section 204 of the 1926 Act provides throughout that in determining gain or loss on the sale of property the basis shall be the cost or fair market value of *such property*. Upon this is predicated the argument that the thing sold in the taxable year was not the same thing acquired by bequest in 1912. But the same objection could be made in a case where the taxpayer purchased the remainder interest and sold the property after the life estate fell in. In such a case cost would clearly be the basis. The only cost that could be used is the cost of the remainder. We would not say that that cost should be increased by reason of the change wrought by the efflux of time, namely, the conversion of the remainder into a fee.

We think there is no merit to the claim that the rule announced herein is a harsh rule merely because the tax is higher than under the method advocated by petitioner. In another case the property might be sold at a loss and the same rule would work in the taxpayer's favor.

Neither do we think it proper to test the soundness of the rule by saying that the effect of postponing the vesting in possession is to increase the tax. It so happens in this case that the tax is increased by reason of the continued rise in the value of the property. On the other hand, had the property consisted of wasting assets, for example, mines or patents, the value would have diminished, and the taxes consequently decreased with each year that the remainderman was kept out of possession.

As we construe the stipulated facts, the parties have agreed that the fair market value of the remainder interest adjusted to a per share value of the stock was $195.45 on March 1, 1913. We may assume that in reaching this agreed figure the parties have started with an accepted value for the stock of $465.90 on March 1, 1913, and have determined the value of the remainder interest by reducing the fair market value of the stock to the extent of the life tenant's interest, based on a life expectancy of 22.36 years. This method of determining value by the use of mortality tables has been sanctioned in *Simpson* v. *United States*, 252 U. S. 547, and *Ithaca Trust Co.* v. *United States*, 279 U. S. 151. In the latter case the court points out that as the gifts to the remaindermen " were subject to the life estate of the widow, of course their value was diminshed by the postponement that would last while the widow lived." It has been suggested that in reaching our conclusion two dates of acquisition were used, namely, March 1, 1913, and the date of death of the life tenant, and that the value on both occasions entered into the computation. We think there is no merit in this criticism. The effective date was March 1, 1913, and only the factors present as of that date were used.

Viewing the case in this way, we now think that we erred in the *Griscom* case in taking as the basic value the value of the stock itself, and that the correct value is the value of the taxpayer's interest therein at the basic date, which in this case is stipulated to be $195.45 per share.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MATTHEWS dissents.

SMITH dissents on the second point.

---

SEAWELL, dissenting: In the *Rodman E. Griscom* case (22 B. T. A. 979) it was held that the basis for determining gain or loss on the sales of property made by a remainderman who had received such property upon the death of the life tenant was the fair market value of the property on March 1, 1913, the ancestor having died prior to that date. By the majority opinion in this case, which overrules the *Griscom* case and is upon comparable facts, it is held that the basis is not the value of the property on March 1, 1913, but the present worth on that date of the property which was to be received by the remainderman at the time of the death of the life tenant.

I dissented in the *Griscom* case for reasons there set down. The objections urged to the conclusions there reached appear to me to be applicable here. In addition to what was there said, I feel constrained to say here that the present decision seems further from the correct solution of the problem presented than the decision in the *Griscom* case. The present worth on March 1, 1913, of property which was to be received on May 15, 1924, is, of course, less than the value of that property on March 1, 1913. The smaller the basis on March 1, 1913, the larger the gain and, accordingly, the larger the tax when the sale is made (sometime after May 15, 1924). By putting into effect here the doctrine of the present worth of property to be received at a subsequent date, the taxes of the remainderman are increased far beyond what they would have been if the property had been bequeathed directly to her without the intervention of any life estate. Upon what theory of law or logic can one be taxed for having the possession of her legacies delayed and withheld from her for 10 or 12 years? The error in this determination lies in the failure to recognize the fact that what this taxpayer sold in 1925 and 1926 contained something (the fee simple) which she did not have in 1913; or in the effort to circumvent that fact by the application of a rule of law, good in settling estates, but incongruous and grotesque in a matter like that involved here, producing exactly the reverse of what is or should be intended. Congress, it must be assumed, never

intended such a result, and the logic that would lead to it must be operating in reverse and under some rule of anticlimax.

Moreover, the statute fixes the time of acquisition of the property as the time when the fair market value of the property is to be ascertained. The main opinion seems to hold that the acquisition of the property in this case was not made on *one* date, but on *two* dates, namely: (1) on (or prior to) March 1, 1913, and (2) on May 15, 1924, when the life tenant died; else why are these two dates used in arriving at the " present worth " value of the property bequeathed? One date or the other is the date of acquisition, not both. On (or prior to) March 1, 1913, an inchoate title (which in time would ripen into full title and permit acquisition of the property) was made; and on May 15, 1924, at the death of the life tenant, that inchoate title ripened into full title and then the property was permitted by it for the first time to be acquired by the taxpayer.

But if the acquisition was made on the one or the other date, or, if possible, as the main opinion suggests, on both dates combined, nowhere does the statute authorize the " fair market value of the property " to be reduced by the application of the principle of the " present worth " value of future acquisition. If the " present worth " doctrine applies, then the " property " (as distinguished from the inchoate title) had not then been acquired. When the " property " has been acquired, then the doctrine can have no application, for it is the " fair market value of the *property* " at the time of *its* acquisition that the statute makes the basis for determining gain or loss.

TRAMMELL dissents for reasons substantially as set forth above.

————

LOVE: I agree with the foregoing written dissent and desire to supplement the same in as brief a statement of my theory as I am able to express in words.

In my judgment the error in the prevailing opinion in this case is brought about by confusion of terms.

In dealing with property rights, there are at least three terms that must be dealt with, viz., property, estate, title.

Property is the subject matter dealt with; it may consist of realty, personalty, choses in action, or what is known as intangibles.

Estate is the quantum of interest owned or held in the property. The estate may be fee simple, life estate, or for a term of years; it may be a freehold or less than freehold.

Title is the kind or nature of the claim which the claimant asserts to the estate; it may be a legal title, an equitable title, or merely a record title; it may be a perfect title, or a defective title.

To illustrate: Suppose that A owned some property, and held a fee simple title thereto; then suppose that A transferred either by deed or by will, that property to B to be held by B during B's life, and further stipulated that upon B's death the property should go to and be held by C in fee simple.

Pretermitting some differences in procedure when the transfer is made by deed and when made by will, B acquires that property, which is the subject matter of the estate, and to which the title applies, immediately. B gets a life estate and C gets a fee simple estate. Both B and C get a legal title, both of which originate in the same instrument, and both are of the same date. C, however, does not acquire the property, which is the subject matter of the several estates and to which the title applies, until B's life estate falls in. Such fall-in may occur by reason of the death of B, or by the purchase by C from B, at which time he acquires the property and holds under the title which he got from A. To hold that the acquisition of the title to the fee simple estate is acquisition of the property is, in my judgment, carrying the *accrual* idea or theory to an irrational extent.

The applicable statute involved in the instant case is section 204 (a) (5) of the Revenue Act of 1924, which stipulates the basic date as the time of the acquisition of the property. Section 204 deals with the disposition of property by sale or otherwise, and points out and provides for thirteen separate and distinct methods of transfer of property, in several of which a *property interest* as distinguished from property, *eo nomine*, is recognized.

I assume, and feel that I must assume, that Congress knew the difference and distinction between the acquisition of *title* to property, and the acquisition of the property itself. In the instant case, the remainderman did not acquire the property (although she did acquire a " property interest ") until twelve years after she acquired title to that property.

The facts disclosed by the record are that petitioner's wife's grandmother bequeathed to her a fee simple title to certain property, and a life estate to another.

As I view the situation, Mrs. Huggett did not acquire the property which was the subject matter of the estate which she held, and to which her title applied, until after the life estate fell in. It may be true that by the will she acquired certain property, or property interest, if in this connection we may term the holding of an interest or a claim to property, as property, but, as before said, in dealing with property rights we must differentiate between property, estate, and title—and what she got by the will of her grandmother was the title to a certain estate, and she did not acquire the property which she, a number of years afterwards, sold, until after the intervening estate

fell in, and that estate did not fall in until twelve years after the grandmother's death, and nearly twelve years after the basic date as determined in the prevailing opinion. The statute designates the basic date as the date of acquisition of *the property*.

I am not seriously concerned about the incongruities wrought as a result of the prevailing opinion. My concern is to determine what the statute means. Congress had the constitutional right to prescribe, as the basic date, the date of acquisition of the title if it so desired, regardless of such incongruities. If Congress intended to do that, it could easily and explicitly have said so. It did not so prescribe, but explicitly prescribed the basic date as the date of the acquisition of the property, and I must assume that Congress understood the *legal* purport of its own language, and meant what it said.