## Lukens's Estate

The facts appear from the adjudication of

GEST, J., Auditing Judge.—George W. Lukens died on March 16, 1899, leaving a will, by which he devised his residuary estate to his trustees, of whom the Provident Trust Company is now remaining trustee, in trust to pay one-third of the income to Eliza Clover, one-third to Pauline Gruninger and one-third to Josie C. Martin during their natural lives and the life of the survivor, "and after the falling of all the estate to the said Grand Lodge of Pennsylvania Free and Accepted Masons to be used for the improvement of the Homestead property by them as they may deem proper for the success and management of the Masonic Home Hospital or dispensary hereinbefore mentioned. In case the said Grand Lodge of Pennsylvania Free and Accepted Masons, shall refuse and neglect within at least thirty days from service of notice to them to accept the gift devise and bequest of this will, I then give, devise and bequeath the estate hereinbefore given and devised to the said Grand Lodge of Pennsylvania Free and Accepted Masons, Unto the Rector Church Wardens and vestrymen of St. Marks Protestant Episcopal Church of Frankford, Philadelphia, their successors and assigns forever subject to the same annuity heretofore mentioned. The Homestead to be used for Church purposes and benefit of the Poor of the Parish or as they may deem to be to the best advantage of the Parish. I hereby nominate, constitute and appoint the Provident Life and Trust Company of the City of Philadelphia, whose office is now at 409 Chestnut Street, Philadelphia, and my esteemed friend, Thomas Leaming, Esq., Attorney at Law, my Executors and Trustees. Provided, also and my further will is in case both or either of the devises or bequests hereinbefore mentioned, The Grand Lodge of Pennsylvania Free and Accepted Masons, or the St. Marks Protestant Episcopal Church of Frankford, shall refuse to accept the gifts devises and bequests and terms of this will after proper notice given, I give and bequeath unto my Executors and Trustees In Trust hereinbefore mentioned to grant, bargain, sell and dispose of the same Homestead property and all my real and personal Estate either at private or Public sale to divide into lots or sell as a whole according to deeds as they may deem to the best advantage for the Estate, and invest the proceeds as hereinbefore provided and the income, interest or dividends to be paid to the life tenants as hereinbefore provided as to the residue estate and after failing in all the life interests hereby created in trust to pay the principal not hereinafter bequeathed to my heirs in law share and share alike."

The word "failing" in the last part of the will was accurately transcribed from the original, but whether we read the words failing in or falling in, the effect is, in my opinion, the same. As the maiden name of the testator's mother was Failing, the error may be so accounted for, as the will seems to be holographic.

Eliza Clover died on January 5, 1926; Pauline Gruninger died on August 6, 1926, and Josie C. Martin died on January 4, 1932, so that the trust is terminated, and the corpus of the estate is now distributable. By writing annexed

to the account, the Provident Trust Company and Daniel W. Simkins, executors of Josie C. Martin, have waived the filing of an income account up to October 21, 1931, and have requested that the account be confirmed. It is stated that, by resolution dated June 7, 1899, the Grand Lodge of Pennsylvania Free and Accepted Masons declined to accept this bequest under the will, and by resolution of March 8, 1900, the Rector, Church Wardens and Vestry of St. Marks Protestant Episcopal Church of Frankford also refused to accept its interest under the will. The devise in remainder to the testator's "heirs in law share and share alike," consequently takes effect. The question is whether the heirs at law are to be determined as of the date of the testator's death, March 16, 1899, or as of the date of the decease of the survivor of the life tenants, January 4, 1932.

The testator died unmarried and without issue, and his parents both predeceased him. He was survived by one uncle, Abram P. Failing, who died November 12, 1899, and by numerous children of deceased uncles and aunts, who were his first cousins. An elaborate family tree was produced by counsel for the accountant, which is hereto annexed, and the petition for distribution sets forth the persons or estates of deceased persons who would be entitled if distribution is to be made as of the testator's death. It also shows that if the distribution is to be determined as of the date of the death of Josie C. Martin, the estate should be divided equally between John Abbott, a son of Mary Ann Failing Abbott, an aunt of the testator, and Jacob Failing, a son of Abram P. Failing, an uncle of the testator, the said John Abbott and Jacob Failing being the surviving first cousins of the testator, and taking under our Intestate Act to the exclusion of second cousins or other collateral kindred.

As long ago as Buzby's Appeal, 61 Pa. 111, it has been regarded as settled in Pennsylvania that, as a general rule of construction, a devise or bequest to heirs or heirs at law of a testator or to his next of kin refers to those who are such at the time of the testator's decease, unless a different intent is plainly manifested by the will, and it would be tedious to recount the cases in which this rule has been constantly followed, until indeed a different canon of testamentary construction was adopted by the Act of June 29, 1923, P. L. 914, which, however, has no application to the present case. The contrary intent must be "clear:" Buzby's Appeal, supra; or "plainly manifested:" McFillin's Estate, 235 Pa. 175; or "clear and unequivocal:" Stewart's Estate, 147 Pa. 383, and Bache's Estate, 246 Pa. 276. "Nothing but a direct insertion of additional words could suffice to indicate a different intention:" Frazer, J., the present Chief Justice, in Stoler's Estate, 293 Pa. 433, 436. " 'Such intention should appear plainly, manifestly and indisputably,' otherwise the estate in remainder is always held to be vested:" McCauley's Estate, 257 Pa. 377, as quoted in Groninger's Estate, 268 Pa. 184, 189. Other similar expressions might be quoted if it were necessary, but it is not. The rule of construction is positive enough.

The learned counsel for John Abbott and Jacob Failing argue, however, that this case is not governed by the general rule because of the gifts to the Grand Lodge of Masons and St. Marks Church prior to the remainders given to heirs in case those corporations should refuse to accept their gifts, so that the devise to the heirs in case of nonacceptance by the charities was merely an executory devise, and the heirs could only be determined as of the date of death of the last life tenant. I cannot agree to this. What was said in Buzby's Appeal, supra, at page 117, may well be quoted:

"But whether the limitation over to the testator's heirs, in the event of the death of the tenant for life without children living, is regarded as an executory devise, or a contingent remainder, will not affect or vary the rule of construc-

tion as it respects the heirs entitled to take. The limitation to the heirs must be construed to mean those who are such at the testator's death, unless a different intent clearly appear. Whether, therefore, the remainder be regarded as contingent or vested, the heirs of the testator who were living at his death are entitled to it under the limitation."

And to this may be added Tatham's Estate, 250 Pa. 269, and Wright's Estate, 284 Pa. 334, 340. Nor do I think that this case is governed by Warne's Estate, 14 D. & C. 105, affirmed in 302 Pa. 386. There the limitation in remainder was "then upon the death of the survivor I direct that my estate shall go to such persons as would then be entitled under the laws of this state, if I had died intestate." And so in Wood v. Schoen, 216 Pa. 425, in which case the gift over in default of issue was "then to those who would then be entitled thereto under the intestate laws of this state." It needs no elaborate analysis of these cases to show their inapplicability to the present. And, finally, the argument derived from the words "to pay the principal," etc., and Rosengarten v. Ashton, 228 Pa. 389, needs little discussion, as it has been fully discussed in Buckman's Estate, 13 D. & C. 653, and Carson's Estate, 16 D. & C. 99, where the decisions are reviewed.

My conclusion is that the heirs are to be determined as of the date of the testator's death, and distribution will be awarded accordingly.

*Richard K. Stevens*, for exceptants.

*G. Harry Ditter, J. Harry Wagner, Jr., Edwin S. Ward* and *Edward A. Collins Jr.*, of *Hepburn & Norris*, contra.

HENDERSON, J., October 28, 1932.—The auditing judge has at great length considered the authorities which governed his interpretation of this will. We agree with his conclusions and for the reasons given by him.

The exceptions are dismissed and the adjudication is confirmed absolutely.