### SAFE DEPOSIT & TRUST CO. OF BALTIMORE v. MILES, Collector of Internal Revenue.

(District Court, D. Maryland. May 26, 1921.)

No. 947.

Internal revenue &⇒7—Taxable "income" from sale of right to subscribe for stock.

Where a guardian, as holder for its ward of shares of stock of a corporation, was given the right to subscribe for an equal number of shares of a new issue of stock at a fixed price, which right it sold, the sum received therefor is not taxable in its entirety as income received during the year, under Income Tax Act Sept. 8, 1916, § 2 (Comp. St. § 6336b), but the amount taxable is the gain or profit realized from the sale which was the excess of the sum received above the net value, after deducting the subscription price, of the new shares it would have obtained by itself exercising the right.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

At Law. Action by the Safe Deposit & Trust Company of Baltimore, guardian of Frank R. Brown, against Joshua W. Miles, Collector of Internal Revenue. Judgment for plaintiff.

Arthur W. Machen, Jr., of Baltimore, Md., for plaintiff.
Robert R. Carman, U. S. Atty., of Baltimore, Md., for defendant.

ROSE, District Judge. The plaintiff, the Safe Deposit & Trust Company of Baltimore, as guardian of one Frank R. Brown, an infant, sold for $12,546.80 the right to subscribe for 35 shares of the stock of the Hartford Fire Insurance Company. The defendant, as collector of internal revenue, insisted that this entire sum was taxable income of the ward, and demanded $1,130.77 as the tax thereon. The plaintiff paid it under protest, unavailingly appealed to the Commission-

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

er, and brought this suit. Its contention that what it received for the rights was capital, and not constitutionally taxable as income, has since been negatived by the Supreme Court. Merchants' Loan & Trust Co. v. Smietanka, 255 U. S. ——, 41 Sup. Ct. 386, 65 L. Ed. ——, decided March 28, 1921.

There remains for consideration its further claim that it is taxable upon such part only of the proceeds of the rights as was, in fact, gain or profit derived from the sale of or dealing in its property in the insurance company. The government, on the other hand, says that, as the plaintiff paid nothing directly for the rights as such, all that it got from their sale was a clear profit to it.

The issue thus joined is whether the law will look to the transaction as a whole, or will close its eyes to everything that preceded the issue of the rights, and to all that came after their sale. There is apparently only one case which has passed upon the precise question here raised. Tax Commissioner v. Putnam, 227 Mass. 522, 116 N. E. 904, L. R. A. 1917F, 806. There the government's position was squarely sustained, as was natural, if not inevitable, after the court had held that stock dividends were taxable income, for while the returns from rights are different things, and may be income, although such dividends are not, the reverse is scarcely possible.

If the stockholder must pay an income tax upon the full nominal amount of a stock dividend, he can hardly escape from paying upon all he gets from the sale of stock rights. It is impossible to be sure that the Supreme Judicial Court would have held the latter taxable, had it not first reached the conclusion that the former were. The express refusal of the Supreme Court of the United States to accept the ruling that stock dividends were income necessarily deprives the Massachusetts case of persuasive force in the federal courts. Eisner v. Macomber, 252 U. S. 189–216, 40 Sup. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. The question must therefore be dealt with as one upon which there is no direct authority. The reiterated declarations of the Supreme Court have, however, it is believed, made plain the principles which should govern its decision. What is taxable is the gain, profit, or income derived from the sale or dealing in property, whether real or personal. 39 Stat. 757 (Comp. St. § 6336b); 40 Stat. 300–307; Goodrich v. Edwards, 255 U. S. ——, 41 Sup. Ct. 390, 65 L. Ed. ——. decided March 28, 1921.

Congress, it is true, has very ample authority to adjust its income taxes according to its discretion, and the rules it prescribes for the ascertainment of taxable income are binding upon the courts, unless they are palpably arbitrary and unjust. La Belle Iron Works v. United States, 255 U. S. ——, 41 Sup. Ct. 528, 65 L. Ed. ——, decided May 16, 1921. The net revenue from some peculiar kind of property, such as mines, may include, not only profit from operation, but a portion of the capital as well. The problems of apportionment may be too difficult, and some of their factors too uncertain, for adjustment by the courts, and the tax may have to be assessed upon the entire net proceeds, with such deductions only, if any, as Congress may have authorized. Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 Sup.

Ct. 201, 61 L. Ed. 460. Nevertheless, by and large, the statute means what it says, and that is that the tax is to be levied on nothing else except gains, profits, and income, and upon them only when actually realized in money or in money's worth, and in determining what is included therein the courts will look through form to substance. Doyle v. Mitchell Bros. Co., 247 U. S. 179, 38 Sup. Ct. 467, 62 L. Ed. 1054; Eisner v. Macomber, supra.

What are the facts to which these general rules are to be applied? The shares of the Hartford Fire Insurance Company were worth, on March 1, 1913, $760 apiece. At the time of the death intestate of the ward's father, the government said that, for the purpose of the estate tax, they were each of the value of $710, and that may be taken as their cost to the plaintiff. The insurance company determined to double the number of its shares, and to give each of its stockholders the right, upon payment of $150 a share, to obtain as many new shares as he held old.

The plaintiff, in the right of every share it held, and which had cost it, as just mentioned, $710, could, by paying $150 a share more, get another, so that it would have two, which in the aggregate would have cost it $860, or $430 apiece. There would be no way of distinguishing between the old and the new. If the latter was something which had not before existed, almost the same might as truthfully be said of the former. Its characteristics had undergone a great change. Before the issue of the new stock, it represented one twenty-thousandth of the capital of the company; afterwards it stood for but one forty-thousandth. Moreover, if the plaintiff had in person taken the new stock, and had had its old and new consolidated into one certificate, and had subsequently sold a part of its holdings, it could not say that that with which it parted was out of the old, or out of the new, or partly out of both. In determining the cost of its shares for the calculation of the profit or loss upon resale, it would be necessary to assume that they had one and all cost the holder an equal amount, which in the case of the plaintiff here was $430 a share.

It certainly could make no difference that without waiting until the stock was issued, and then selling, it sold the right to the new stock, and made it part of the consideration that the buyer should assume for it the payment of the $150 per share exacted by the company. All that would have to be borne in mind in comparing the two ways of reaching the same end is that, if the right was sold, the price really received for the new share was $150 more than the sum paid to the seller, which in the case at bar was $358.48. That was equivalent to $508.48 for a fully paid for share, and the $78.48 by which it exceeded the $430, which the share cost the plaintiff, was the gain or profit it made out of the transaction.

That is the whole story. If $78.48 be multiplied by 35, the number of shares or rights sold by the plaintiff, the product will be $2,746.80, and upon that it was properly taxable, and upon nothing more. It still retains 35 shares. When, if ever, they, or any of them, are sold, there must be returned as profit, in the year in which the price is received for them, the amount, if any, by which that price exceeds $430. It is, of

course, immaterial that, if the plaintiff had chosen at the time it parted with the rights to the other 35, to sell any of those it still held, it would have made a taxable profit of nearly $80 a share upon those so disposed of. There is no tax upon a profit until that profit is realized.

The counsel for the opposing parties can doubtless agree upon the figures for which, in accordance with the conclusions herein reached, the plaintiff is entitled to a verdict.