AARON STRAUS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65091. Promulgated April 6, 1933.

*Frederick Schwertner, Esq.*, and *S. Frank Levy, C. P. A.*, for the petitioner.

*Prew Savoy, Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency of $14,284.44 in the petitioner's income tax for the calendar year 1929. The sole issue relates to the deduction to which the petitioner is entitled for charitable contributions. The parties filed a stipulation of facts as follows:

1. The petitioner, a resident of Baltimore, Maryland, had during the calendar year 1929 an "ordinary net income," of $43,079.90 as defined by section 101 (c) of the Revenue Act of 1928, but without any allowance of a deduction for contributions as provided by section 23 (n) of said Act. There were no items of capital loss or capital deductions for the year 1929. The petitioner also had during the year 1929 a "capital gain," of $766,463.96, as defined by section 101 (c) of said Act, but without any allowance of a deduction for contributions as provided by section 23 (n), and he elected to have the capital

gain taxed at 12½ per cent under section 101 (a) of the Revenue Act of 1928. The gross income of the petitioner for 1929, excluding capital gains, was $159,831.87 and the amount of the ordinary deductions without any deduction for contributions was $116,751.97. The total amount of contributions made by the petitioner during the calendar year 1929 of a character deductible from net income subject to the limitations provided in Section 23 (n) of the Revenue Act of 1928 was $144,695.04. The petitioner in his tax return for 1929 deducted the amount of $117,667.90 upon the claim that in determining the amount of 15 per cent of petitioner's net income for the year 1929 under section 23 (n) of the Revenue Act of 1928, ordinary net income and capital gain should both be included, which contention is asserted by petitioner and denied by the Commissioner, and this stipulation shall not prejudice the rights of either petitioner or respondent as to the legality of such deduction in excess of 15 per cent of ordinary net income. The said sum of $117,667.90 was based upon the ordinary net income and capital gain as originally computed by the petitioner, but the revised figures of $43,079.90 and $766,463.96, representing respectively the petitioner's ordinary net income and capital gain as determined by the Commissioner are accepted as correct. The Commissioner allowed as a deduction for contributions under section 23 (n) of the Revenue Act of 1928 the sum of $6,461.99, being 15 per cent of the petitioner's ordinary net income of $43,079.90, and disallowed as a deduction the balance of contributions.

2. The petitioner filed his tax return for the year 1929 with the Collector of Internal Revenue, Baltimore, Maryland, on May 6, 1930, showing a total tax liability of $82,288.35, which was assessed on the May, 1930 list, and this amount together with interest in the sum of $24.89, or a total of $82,313.24, was paid to the said Collector in four quarterly installments of $18,750.00, $22,419.07, $20,515.22 and $20,628.95 on March 12, 1930, June 14, 1930, September 15, 1930 and December 15, 1930, respectively. The petitioner also paid to the said Collector on July 26, 1932 as an advance payment $3,028.69 of the deficiency of $14,284.44 asserted by the respondent in his deficiency notice dated February 27, 1932 for the year 1929, as the entire amount of the deficiency asserted for said year is not in controversy. The respondent assessed the said sum of $3,028.69, together with interest in the amount of $427.00, or a total of $3,455.69 on the January 14, 1933 list.

The only question in this case is to determine the amount of the deduction to which the petitioner is entitled on account of charitable contributions. The parties concede that the contributions were in excess of the deduction however it is to be determined. This is because there is a limitation upon the deduction. Section 23 (n) of the Revenue Act of 1928 allows the deduction and fixes the limitation as follows:

In the case of an individual, contributions or gifts made within the taxable year to or for the use of:

(1) the United States, any State, Territory, or any political subdivision thereof, or the District of Columbia, for exclusively public purposes;

(2) any corporation, or trust, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children

or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual;

(3) the special fund for vocational rehabilitation authorized by section 7 of the Vocational Rehabilitation Act;

(4) posts or organizations of war veterans, or auxiliary units or societies of any such posts or organizations, if such posts, organizations, units, or societies are organized in the United States or any of its possessions, and if no part of their net earnings inures to the benefit of any private shareholder or individual; or

(5) a fraternal society, order, or association, operating under the lodge system, but only if such contributions or gifts are to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals;

to an amount which in all the above cases combined does not exceed 15 per centum of the taxpayer's net income as computed without the benefit of this subsection. Such contributions or gifts shall be allowable as deductions only if verified under rules and regulations prescribed by the Commissioner, with the approval of the Secretary. (For unlimited deduction if contributions and gifts exceed 90 per centum of the net income, see section 120.)

Net income is the gross income computed under section 22 less the deductions allowed by section 23. See section 21. These are general provisions of the act and apply to every individual taxpayer.[1] Gross income, as defined in section 22, includes capital gains, and, consequently, net income likewise includes capital gains. Cf.

---

[1] §§ 21, 22, and 23 appear under " Subtitle B—General Provisions " and are, in so far as material hereto, as follows :

SEC. 21. NET INCOME.

" Net Income " means the gross income computed under section 22, less the deductions allowed by section 23.

SEC. 22. GROSS INCOME.

(a) *General definition.*—" Gross income " includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever.

  \*    \*    \*    \*    \*    \*    \*

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) *Expenses* \*\*\*; (b) *Interest* \*\*\*; (c) *Taxes generally* \*\*\*; (d) *Taxes of shareholder paid by corporation* \*\*\*;

(e) *Losses by individuals.*—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

(1) if incurred in trade or business; or

(2) if incurred in any transaction entered into for profit though not connected with the trade or business; or

(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft.

(f) *Losses by corporations* \*\*\*; (g) *Basis for determining loss* \*\*\*; (h) *Loss on sale of stock or securities* \*\*\*; (i) *Net losses* \*\*\*; (j) *Bad debts* \*\*\*; (k) *Depreciation* \*\*\*; (l) *Depletion* \*\*\*; (m) *Basis for depreciation and depletion* \*\*\*; (n) *Charitable and other contributions* \*\*\*; (o) *Future expenses in case of casual sales of real property* \*\*\*; (p) *Dividends received by corporations* \*\*\*; (q) *Pension trusts* \*\*\*.

*American Can Co.* v. *Bowers,* 35 Fed. (2d) 832, 834; certiorari denied, 281 U. S. 736. Nor would capital gain be excluded from net income in computing the limitation on the deduction for contributions unless some other provision of the act requires its exclusion.

The Commissioner contends that where section 101 (a) is applied, the deduction for contributions may not exceed ·15 per cent of "*ordinary net income*" computed without any deduction for contributions. He would thus exclude from the computation of the deduction allowed by section 23 (n), all items of capital gain, captial loss, and capital deductions. In the present case there are no items of capital loss or capital deductions, so he has excluded only capital gain. He would support his action by the decisions of three divisions of the Board. *Ralph W. Harbison,* 26 B. T. A. 896; *Susan Dwight Bliss,* 27 B. T. A. 205; *Mary Colgate,* 27 B. T. A. 506. There is also the case of *Hallie D. Elkins,* 24 B. T. A. 572, which involved the related question where there was a capital net loss. That case was reviewed by the Board and was followed in *Charles J. Livingood, Executor,* 25 B. T. A. 585. The cases involving capital net losses may or may not be distinguishable from those involving capital net gains. We express no opinion on that subject, but confine ourselves strictly to the question before us. In the present case and in three others now pending before the Board, counsel for the petitioners contend that the Board has decided incorrectly at least the first three cases listed above. What authority is there in the Revenue Act of 1928 for the view thus taken by the Board and adopted by the Commissioner?

Section 101 [2] contains no specific reference to a special limitation upon a deduction for charitable contributions. Neither in the words of the section nor in its legislative history is there any indication that Congress had the subject in mind while framing the section. The possibility of section 101 affecting the deduction for contributions probably did not occur to the legislators, since the two subjects are so unrelated and the alleged effect is so indirect. This

---

[2] SEC. 101. CAPITAL NET GAINS AND LOSSES.

(a) *Tax in case of capital net gain.*—In the case of any taxpayer, other than a corporation, who for any taxable year derives a capital net gain (as hereinafter defined in this section), there shall, at the election of the taxpayer, be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows : a partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted and the total tax shall be this amount plus 12½ per centum of the capital net gain.

(b) *Tax in case of capital net loss.*—In the case of any taxpayer, other than a corporation, who for any taxable year sustains a capital net loss (as hereinafter defined in this section), there shall be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows : a partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted, and the total tax shall be this amount minus 12½ per centum of the

should be borne in mind while reading section 101. If any such limitation exists it must be due to the use of some precise language from which the limitation inevitably follows by necessary implication.

Congress in this section does not abandon the general definitions of gross and net income contained in sections 21 and 22, or does it change the deductions allowed by section 23 in so far as the section relates to capital net gains. On the contrary, gross income, net income, and the allowable deductions are the same for the capital net gain purposes of this section as they are in sections 21, 22, and 23. Section 101 merely distinguishes income and deductions of a capital nature from ordinary income and ordinary deductions and provides for a special method of calculating the tax where there has been a capital net gain. The deductions allowed by section 23 are thus divided into " ordinary deductions " and " capital deductions "—

[Sec. 101 (c)] (3) "Capital deductions" means such deductions as are allowed by section 23 for the purpose of computing net income, and are properly allocable to or chargeable against capital assets sold or exchanged during the taxable year.

(4) "Ordinary deductions" means the deductions allowed by section 23 other than capital losses and capital deductions.

But no part of the deductions allowed by section 23 is lost to the taxpayer in this process.

---

capital net loss; but in no case shall the tax of a taxpayer who has sustained a capital net loss be less than the tax computed without regard to the provisions of this section.

(c) *Definitions.*—For the purposes of this title—

(1) " Capital gain " means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921.

(2) " Capital loss " means deductible loss resulting from the sale or exchange of capital assets.

(3) " Capital deductions " means such deductions as are allowed by section 23 for the purpose of computing net income, and are properly allocable to or chargeable against capital assets sold or exchanged during the taxable year.

(4) " Ordinary deductions " means the deductions allowed by section 23 other than capital losses and capital deductions.

(5) " Capital net gain " means the excess of the total amount of capital gain over the sum of (A) the capital deductions and capital losses, plus (B) the amount, if any, by which the ordinary deductions exceed the gross income computed without including capital gains.

(6) " Capital net loss " means the excess of the sum of the capital losses plus the capital deductions over the total amount of capital gain.

(7) " Ordinary net income " means the net income, computed in accordance with the provisions of this title, after excluding all items of capital gain, capital loss, and capital deductions.

(8) " Capital assets " means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business. For the purposes of this definition—

(A) In determining the period for which the taxpayer has held property received on an exchange there shall be included the period for which he held the property exchanged, if under the provisions of section 113, the property received has, for the purpose of determining gain or loss from a sale or

Apparently the Commissioner places his chief reliance upon the language of section 101 (c) (7), which is as follows:

" Ordinary net income " means the net income, computed in accordance with the provisions of this title, after excluding all items of capital gain, capital loss, and capital deductions.

This language does not mean that net income is to be *computed* after excluding certain items of a capital nature. It means that " net income " is to be computed in the regular way and " ordinary net income " is what remains of this " net income " after the capital items have been excluded from it. This is clearly indicated by the punctuation used by Congress. The phrase " computed in accordance with the provisions of this title " is set off by commas and modifies " net income." Section 101 (c) (7) is not to be read as if one or both of the first two commas had been omitted, or as if it provided that ordinary net income means net income computed after excluding all items of a capital nature. " This title " means Title I. Net income computed in accordance with Title I is obviously net income as defined in section 21 of Title I, i. e., gross income as defined in section 22 less the deductions allowed by section 23. There is in section 101 (c) (7) no further limitation on the deduction for contributions beyond that contained in section 23 (n). Since there is nothing to indicate that Congress had this subject in mind while framing this section, we should be slow to read the intent into the words used by Congress on an unrelated subject. We may not read this thought into the statute where the words used do not contain it. Note the difference in section 101 (c) (5), where Congress used the words " gross income computed without including capital gains."

"Capital net gain " means the excess of the total amount of capital gain over the sum of (A) the capital deductions and capital losses, plus (B) the amount, if any, by which the ordinary deductions exceed the gross income computed without including capital gains.

If Congress, in section 101 (c) (7) had used the words " net income computed without including capital gain " the Commissioner would

exchange, the same basis in whole or in part in his hands as the property exchanged.

(B) In determining the period for which the taxpayer has held property however acquired there shall be included the period for which such property was held by any other person, if under the provisions of section 113, such property has, for the purpose of determining gain or loss from a sale or exchange, the same basis in whole or in part in his hands as it would have in the hands of such other person.

(C) In determining the period for which the taxpayer has held stock or securities received upon a distribution where no gain is recognized to the distributee under the provisions of section 112(g) of this title or under the provisions of section 203(c) of the Revenue Act of 1924 or 1926, there shall be included the period for which he held the stock or securities in the distributing corporation prior to the receipt of the stock or securities upon such distribution.

be supported in his contention. But it did not use these words or any of like import.

Section 101 (a) is as follows:

(a) *Tax in case of capital net gain.*—In the case of any taxpayer, other than a corporation, who for any taxable year derives a capital net gain (as hereinafter defined in this section), there shall, at the election of the taxpayer, be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: a partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted and the total tax shall be this amount plus 12½ per centum of the capital net gain.

This provision bases the partial tax on the " ordinary net income." We have seen that " ordinary net income " is computed by allowing a deduction for contributions limited only as provided in section 23 (n). Section 101 (a) further provides that the partial tax shall be computed " in the manner as if this section had not been enacted," which certainly indicates no limitation on the deduction allowed by section 23 (n). It does not provide that the partial tax shall be levied upon the ordinary net income computed as if that income had been all of the taxpayer's income. Thus we have exhausted the special provisions of section 101 relating to a capital net gain without finding any justification for the Commissioner's determination. Consequently, we must conclude that Congress did not intend any such limitation on the deduction allowed by section 23 (n). Cf. secs. 120, 168, 186, and 706.

The case of *Sadowsky* v. *Anderson*, 29 Fed. (2d) 677; certiorari denied, 279 U. S. 849, is based upon an entirely different legislative provision. The court recognized this difference, as the following excerpt from the opinion indicates:

It is true that the business income remained that of an individual, but section 330 not only says that it shall " be taxed as the net income of a corporation is taxed," but that it " shall be computed as if such corporation had been in existence on and after January 1, 1918." By this language the method of computation and rate and mode of taxation are brought under sections 232 to 236 of the act (40 Stat. 1077, 1080), and the taxpayer receives no benefits from section 214 (a) (11).

The fact that the allowance of charitable gifts was not cut off where income of individuals derived from capital gains was taxed at special rates under section 206 of the Revenue Act of 1921 (42 Stat. 232), and that it was similarly available where dividends of prior years were received in 1917, or subsequent years, but taxed at prior years' rates, can not extend the deduction to income derived from plaintiff's clothing business. The option in those cases related merely to rates, and was accompanied by no language providing for the " *computation* " of the income as that of a corporation.

The case supports the petitioner rather than the respondent.

In our three prior decisions we took the view that the scheme of section 101 was to *separately compute* ordinary net income and

capital net gain. In this, we now think, we were in error. The *computation* is made under sections 21, 22, and 23. Section 101 (a) requires only that the various items thus *computed* be *separated* into those of a capital nature and those not of a capital nature, called for convenience, ordinary. Our three prior decisions on the present question will no longer be followed.

Reviewed by the Board.

*Decision will be entered for*
*the petitioner under Rule 50.*

