ELLEN AYER WOOD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65211.   Promulgated February 9, 1934.

*Charles W. Morrill, Esq.*, for the petitioner.
*Warren F. Wattles, Esq.*, for the respondent.

OPINION.

McMAHON: The petitioner contends that where corporate stock is obtained through the exercise of stock rights by one who has received the rights on shares of the same stock already held, the date to be taken for the purpose of computing the two-year period under section 101 of the Revenue Act of 1928 is the date of acquisition of the parent stock, and not the date when the rights were exercised.

The pertinent provisions of section 101 of the Revenue Act of 1928 are set forth in the margin.[1]

The same question was considered by the Board in *Rodman E. Griscom*, 22 B.T.A. 979, wherein the taxpayer had sold on August 7, 1925, together with other stock, 34 shares of certain stock, of which 19 had been acquired by the taxpayer in July 1923 through the exercise of rights to subscribe and 15 had been acquired in July 1924 through the exercise of rights to subscribe. The Board held that:

Since the 34 shares, together with the 130 shares of Pennsylvania Water & Power Company stock were sold on August 7, 1925, it follows that the 19 shares acquired by purchase in July, 1923, constituted capital assets of the petitioner within the meaning of section 208 (a) (8) [of the Revenue Act

---

[1] SEC. 101. (c) *Definitions.*—For the purposes of this title—

    *       *       *       *       *       *       *

(8) " Capital assets " means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the case of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business. For the purpose of this definition—

    *       *       *       *       *       *       *

(C) In determining the period for which the taxpayer has held stock or securities received upon a distribution where no gain is recognized to the distributee under the provisions of section 112 (g) of this title or under the provisions of section 203 (c) of the Revenue Act of 1924 or 1926, there shall be included the period for which he held the stock or securities in the distributing corporation prior to the receipt of the stock or securities upon such distribution.

of 1924, defining " capital assets "], but the 15 shares acquired in July, 1924, are not capital assets for the reason that they were held less than two years from the date of sale.

However, the petitioner on brief contends that, since the introduction of the capital net gain provision in the Revenue Act of 1921, the Commissioner has consistently held that in the case of a stock dividend the basic date to be used in reckoning the capital asset period is the date of acquisition of the parent stock; that his position with respect to stock acquired through the exercise of rights to subscribe was the same as that respecting stock dividends as disclosed by I.T. 1786, C.B. II–2, 45 (1923) ;[2] that in the case of *Rodman E. Griscom, supra,* the previous long established ruling is ignored and a new rule is set up with no attempt at explanation or justification; that thereafter I.T. 1786 was revoked by I.T. 2609, C.B. X–2, 339 (1931), upon authority of the decision in *Rodman E. Griscom, supra;* that during the time I.T. 1786 was in force, 1923 to 1931, the statute in question was reenacted by Congress without substantial change in 1924, 1926, and 1928; that the case of *Rodman E. Griscom, supra,* is wrong in theory and on authority and is an unjustifiable reversal of a rule long established and impliedly approved by Congress; and that at the very least such new rule seems to be in direct conflict with the ruling in the case of *Miles* v. *Safe Deposit & Trust Co.,* 259 U.S. 247.

I.T. 1786 is a ruling of the Income Tax Unit. These rulings are published and on the outer page of each weekly publication, entitled " Internal Revenue Bulletin ", as well as on the cover page of each semiannual publication thereof, known as " Cumulative Bulletin ", appears the following:

SPECIAL ATTENTION is directed to the cautionary notice on this page that *published rulings of the Bureau do not have the force and effect of Treasury Decisions* and that they are applicable only to the facts presented in the published case.

\* \* \* \* \* \* \*

The rulings reported in the Internal Revenue Bulletin are for the information of taxpayers and their counsel as showing the trend of official opinion in the administration of the Bureau of Internal Revenue; *the rulings other than Treasury Decisions have none of the force and effect of Treasury Decisions and do not commit the Department to any interpretation of the law which has not been formally approved and promulgated by the Secretary of the Treasury.* \* \* \* [Emphasis ours.]

While article 1651 of Regulations 62, Act of 1921, Regulations 65, Act of 1924, and Regulations 69, Act of 1926, and article 501

---

[2] I.T. 1786. In the case of stock acquired upon the exercise of rights, if the stock with respect to which such rights were issued was acquired and held by the taxpayer for profit or investment for more than two years, he may elect to be taxed upon the gain from the sale of such stock under the provisions of section 206 of the Revenue Act of 1921.

of Regulations 74, Act of 1928, each contain a ruling to the effect that if the taxpayer has held for more than two years stock upon which a stock dividend has been declared, both the original and dividend shares are considered to be capital assets, we are unable to find that I.T. 1786 has been incorporated in such articles or regulations.

In *George Bullock*, 23 B.T.A. 710, after discussing the history of section 206 (a) (6), section 208 (a) (8), and section 208 (a) (8) of the 1921, 1924, and 1926 Acts, respectively, defining the term " capital assets ", the Board states as follows:

> We think that when Congress in the Acts of 1921 and 1924 defined capital assets to mean " property held by the taxpayer for more than two years " it intended that the *specific* property sold must have been held by *the taxpayer* for more than two years, and that under the Revenue Act of 1926 it intended to and did enlarge the term " capital assets " to include the kind of cases provided for in section 208 (a) (8) thereof. *It seems clear that the provisions of the 1926 Act in this respect were new provisions.* [Emphasis ours.]

Both the Committee on Ways and Means, in its report accompanying H.R. No. 1, Rept. No. 1, Union Calendar No. 1, 69th Cong., 1st sess., and the Committee on Finance in the Senate, in its report accompanying H.R. No. 1, Rept. No. 52, Calendar No. 54, 69th Cong., 1st sess., state:

> The 12½ per cent capital gain and loss provisions apply only to the sale or exchange of capital assets which have been held by the taxpayer for two years. Under the reorganization provisions many transactions are exempt from tax until the stockholder disposes of his stock received as a result of the reorganization. As a result of this fact the question frequently arises as to whether the period that the taxpayer held the stock which he exchanged for new stock should be added to the period for which he held his new stock, in order to determine whether or not he has held it for two years. The amendment proposed to this section (The House Bill) incorporates in the law the present regulation of the Treasury and provides that these two periods shall be added for the purpose of determining the period during which the property sold was held for the purpose of determining both gain and loss under this section. The same question arises in the case of property received by gift after December 31, 1920. The amendment (The House Bill) provides that the period for which the property was held by the donor shall be added to the period for which the property was held by the donee in determining whether or not the property so received falls within the capital gain or loss section.

However, to its report the Senate Committee on Finance added the following:

> The committee recommends a further provision that in determining the period for which the taxpayer has held stock or securities received upon a distribution where no gain is recognized to the distributee under section 203 (c) of this bill or the Revenue Act of 1924 there shall be included the period for which he held the stock or securities in the distributing corporation. *Inasmuch*

*as section 203 (c) in this bill and in the Revenue Act of 1924 is broad enough to include the case of stock dividends, the committee amendment takes care of the determination of the two-year period in the case of stock dividends, as to which the present Treasury regulations apply the same rule.* [Emphasis ours.]

The provision recommended by the Senate Committee on Finance is Senate amendment numbered 10 and is as follows:

In determining the period for which the taxpayer has held stock or securities received upon a distribution where no gain is recognized to the distributee under the provisions of subdivision (c) of section 203 of this Act or of the Revenue Act of 1924, there shall be included the period for which he held the stock or securities in the distributing corporation prior to the receipt of the stock or securities upon such distribution.

This provision was added to section 208 (a) (8) as it appeared in the House bill and also appears in substantially the same form as subdivision (C) of subsection (c) (8) of section 101 of the Revenue Act of 1928.

Thus it will be seen that, although I.T. 1786 had not been revoked at the time of the enactment of the 1926 Act, the Senate Committee on Finance in its report refers only to the Treasury regulations and in particular to the " determination of the two-year period in the case of stock dividends."

The petitioner, on brief, relies in particular upon *Miles* v. *Safe Deposit & Trust Co., supra.* The only question involved in that case is whether the entire amount received by a taxpayer on the sale of certain rights to subscribe to stock is taxable income. The Supreme Court in its opinion does not state that the stock received upon the exercise of rights to subscribe is analogous to a stock dividend. It states:

* * * The stockholder's right to take his part of the new shares there-fore—*assuming their intrinsic value to have exceeded the issuing price*—was essentially analogous to a stock dividend. [Emphasis ours.]

To the extent thus indicated the right to subscribe is analogous to a stock dividend; but, as stated by the Court in the above case:

The right to subscribe to the new stock was but a right to participate, in preference to strangers and on equal terms with other existing stockholders, in the privilege of *contributing new capital* called for by the corporation * * *. [Emphasis ours.]

And the Court indicates the distinction between stock dividends and rights to subscribe to stock in the following language:

This privilege of itself was not a fruit of stock ownership in the nature of a profit; nor was it a division of any part of the assets of the company.

Furthermore, while the stockholder receiving an ordinary proportionate stock dividend retains the same interest in the corporation that he had before the issuance of the stock dividend (the cor-

poration merely transferring surplus to capital, *Eisner* v. *Macomber*, 252 U.S. 189), whether or not the stockholder's interest will be the same after issuance of rights to subscribe depends upon whether or not such rights are exercised by the stockholder receiving the rights. When rights to subscribe to new stock are given, the stockholder retains his former interest in the corporation only upon condition that he exercise the right according to its terms and pay the price fixed in such right for such new stock. It is, therefore, analogous to, if not strictly in fact, a purchase of stock, not at the market price, if any, but at a price fixed by the corporation, the right to purchase being first extended to stockholders rather than to strangers.

In view of the foregoing and after due consideration of all of the other authorities cited in petitioner's brief and of the argument of her counsel, we are of the opinion that the *Griscom* case should not be overruled; and that since the 82 shares of stock in question, having been purchased on December 30, 1927, and sold on April 16, 1929, were not "held" by the petitioner for "more than two years," the same were not "capital assets" within the meaning of sevtion 101 (a), (c) (8) of the Revenue Act of 1928.

The facts disclose that the four-eighths share was part of a stock dividend received August 3, 1929, by the petitioner on shares purchased on June 15, 1929, under rights to subscribe received May 24, 1929, on stock purchased on April 20, 1926, under rights to subscribe received March 3, 1926, on stock acquired by the petitioner prior to January 1, 1923. Since the stock on which the four-eighths share stock dividend was issued was purchased June 15, 1929, in the same year the four-eighths share was sold, such four-eighths share was not a capital asset within section 101 (c) (8) (C).

The petition alleges that the respondent erred in decreasing the deduction for contributions by allowing only 15 percent of the ordinary net income instead of 15 percent of the sum of the ordinary net income and capital gains.

The respondent calls attention to the decision of the Board in *Aaron Straus*, 27 B.T.A. 1116, but cites and relies on Board cases overruled by it. Upon the authority of *Aaron Straus, supra*, we hold that the respondent erred in decreasing the deduction for contributions from 15 percent of the sum of petitioner's net income and capital net gain to 15 percent of her net income. See *Bliss* v. *Commissioner*, 68 Fed. (2d) 890, and *Harbison* v. *Commissioner*, 68 Fed. (2d) 1004.

Reviewed by the Board.

*Decision will be entered under Rule 50.*