MAY ROGERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HORACE S. TUTHILL, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDNA MAY THRALL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 45051, 52448, 52449, 55546. Promulgated August 8, 1935.

*Hugh Satterlee, Esq.,* and *I. Herman Sher, Esq.,* for the petitioners. *Mason B. Leming, Esq.,* for the respondent.

SUPPLEMENTAL OPINION.

SEAWELL: In the income tax return petitioner Tuthill filed for 1925 he computed the tax on gain realized from the sale in November 1925 of 2,574 shares of stock of the Sheffield Farms Co. at the net capital gain rate of 12½ percent. In his determination of the deficiency the respondent taxed the profit in the same manner.

Excepting 234 shares acquired in July 1924 at a cost of $100 per share by the exercise of stock rights issued on the basis of one right for each 10 shares of stock held, all of the stock sold was held for a period in excess of two years. In our report in these proceedings, 31 B. T. A. 994, we determined, among other things, the fair market value of 1,280 shares of the stock acquired by gift and bequest, the basis for the remaining shares not being in controversy. Neither party raised the question of whether the profit was taxable at the net capital gain rate or as ordinary income.

On January 31, 1935, the respondent moved that the Board reconsider its findings of fact and opinion and hold that the profit derived by petitioner Tuthill from the sale of the 234 shares of stock he acquired by exercise of stock rights be taxed as ordinary income. At the hearing had on the motion counsel for petitioner Tuthill consented to the allowance of the motion, provided there be a further hearing as to the value of the old stock at the time of issuance of the stock rights. Such a hearing was had, but neither party offered any evidence on the point. Pursuant to leave granted at the hearing, the respondent has amended his answer to raise the question of whether the gain derived from the sale of the 234 shares of stock acquired by the exercise of the stock rights is taxable at the net capital gain rate or as ordinary income, and to claim an increased deficiency.

In *Rodman E. Griscom,* 22 B. T. A. 979, we held that stock acquired by the exercise of stock rights and not held for more than two years does not constitute a capital asset within the meaning of section 208 (a) (8) of the Revenue Act of 1924. In *Ellen Ayer Wood,* 29 B. T. A. 1050, we reconsidered the question at length and

# 1178

reached the same conclusion. The holdings in these cases are in substance that in determining whether stock acquired through the exercise of stock rights is a capital asset .the time the old stock was owned may not be added to the period during which the new stock was held. The Commissioner's rulings are in harmony with the Board. G. C. M. 12942, C. B. XIII-1, p. 73.

The petitioner contends that the proper rule is that announced by the Circuit Court of Appeals for the First Circuit in *Wood* v. *Commissioner*, 75 Fed. (2d) 364, reversing *Ellen Ayer Wood, supra*. In that case the court held that, where stock rights are exercised by the person to whom they were issued, the stockholder acquires a new interest which may not be regarded as a capital asset unless held for more than two years, but that so much of the new stock as is allocable to the " right element " constitutes a capital asset if the stock with respect to which the rights were issued was held more than two years prior to the sale of the new stock. In discussing the question the court said:

From it it follows that when new capital is added to the assets of an existing corporation each share represented by the certificates issued therefor is not a share in the new capital alone but automatically spreads over and attaches itself to the whole and every part of the corporation and the old certificates likewise automatically come to represent interests in the new as well as the old. Therefore when the petitioner purchased the 82 shares of stock in December, 1927, thus adding to her holdings of 1,050 shares, she had 1,132 shares each of which was a proportional interest in the whole corporation—both the old and the new values—and when she sold a share, whether by delivering an old or new certificate, she transferred a proportional interest in the whole corporation. A part of this interest or property she had held for more than two years and a part she had acquired within the two years.

The court illustrated its method of allocating the interest between the old and new stock by the following examples:

* * * If the old stock was valued at $150 [at time stock rights were issued] and the subscription price of the new was $100, the two shares (1 new and 1 old) would be valued at $250, and every one of the shares, both new and old, would be worth $125. To this value the old interest contributed 150/250ths (3/5ths) and the new interest contributed 100/250ths (2/5ths) and 2/5ths of $125 or $50 per share would be the value of the new property sold whether the certificates delivered were new or old. The above illustration applies where the stockholder has the right to subscribe for one new share for every share previously held. If, for instance, the right was to subscribe for one share for every two previously held, then the value of the two old shares would be $300 and of the new $100, or $400 for the three, making each share worth $133.33 and 300/400ths or 3/4ths thereof would be the value attributable to the old interest and 100/400ths or 1/4th ($33.33) would be attributable to the new and would be that part of the new property sold when a share was disposed of.

The precise question has never received the consideration of any other court. See *Commissioner* v. *Cummings*, 77 Fed. (2d) 670.

The Board followed the *Griscom* and *Wood* cases, *supra*, in *Samuel Insull, Jr.*, 32 B. T. A. 47, and in memorandum opinions entered prior to the decision in *Wood* v. *Commissioner*, *supra*. A petition to review was recently filed with the Circuit Court of Appeals for the Second Circuit in one of the memorandum opinions and this proceeding may be taken to the same circuit. With due respect to the court which reversed our decision in the *Wood* case, it is believed that our conclusion in that case was correct, and we hold the gain taxable as ordinary income.

There remains the question of the proper basis for the 234 shares of stock acquired by the exercise of stock rights.

The respondent has determined a basis of $116.5113 per share by adding to the petitioner's basis for all of his old stock the subscription price of the new stock, a total of $299,900, and dividing this amount by 2,574, the total number of old and new shares. The method employed is in accordance with article 39 (1), Regulations 65, reading:

(1) If the shareholder exercises his right to subscribe, the basis for determining gain or loss from a subsequent sale of any one of the old or new shares will be the cost or other basis of the old shares plus the subscription price of the new shares divided by the total number of the old and new shares.

The same method of computation was used under the Revenue Acts of 1918 and 1921. Article 39, Regulations 45 and 62, as amended by T. D. 3402 and T. D. 3403, following the decision of the court in *Miles* v. *Safe Deposit & Trust Co. of Baltimore*, 259 U. S. 247; C. B. I-2, pp. 63, 64.

The petitioner contends that, following the reasoning of the court in *Wood* v. *Commissioner*, *supra*, the basis for each share of new stock should be computed as follows, assuming the value of the old stock to be $350 per share at the time of the issuance of the stock rights:

| | |
|---|---:|
| Value 10 shares of old stock | $3,500.00 |
| Subscription price 1 share of new stock | 100.00 |
| Value of each share of new and old stock (1/11th of $3,600) | 327.2727 |
| Value and cost of new interest (1/36th of $327.2727) | 9.0909 |
| Sales price of new interest (1/36th of $500) | 13.90 |
| Ordinary income ($13.90—$9.09) | 4.81 |

By this method of computing the gain the petitioner determines a profit of $12,378.60 taxable as ordinary income. The respondent's method results in ordinary gain of $89,736.36, with a corresponding decrease in the amount of gain on the old stock taxable at the capital net gain rate.

The *Wood* and *Insull* cases involved stock acquired by the exercise of stock rights issued after January 1, 1925. In neither of these

cases or the earlier *Griscom* case, which involved stock rights exercised in 1924, was it necessary for us to determine the basis for the stock sold.

In *Miles* v. *Safe Deposit & Trust Co. of Baltimore, supra,* the Court approved the method adopted by the trial court (273 Fed. 822) in determining the basis for stock rights sold in 1919. The trial court, in arriving at a basis for the stock rights, first determined what would have been the taxpayer's basis for each share of old and new stock if it had exercised the rights. It determined such basis by dividing the taxpayer's basis for the old stock, plus ·the subscription price for the new stock, by the total number of shares held. This method has been employed in other cases to determine the basis for the stock with respect to which the rights were issued and exercised, as here, prior to January 1, 1925. *Thomas S. Fuller,* 4 B. T. A. 992; *Frederick Ayer,* 6 B. T. A. 152; affd., 25 Fed. (2d) 534; *Hewes* v. *Eaton,* 39 Fed. (2d) 917; *Kelly* v. *Anderson,* 5 Fed. Supp. 333.

Article 39 of Regulations 69, promulgated under the Revenue Act of 1926, is cited by the petitioner as prescribing the method for ascertaining gain or loss on the sale of stock acquired through the exercise of rights. Such regulations are not applicable to sales of stock acquired in the exercise of rights issued prior to January 1, 1925. As to such sales, article 39 of Regulations 65 applies. T. D. 4018, C.B. VI–1, p. 36, as amended by T. D. 4145, C.B. VII–1, p. 59; G. C. M. 11743, C.B. XII–2, p. 31.

The fact that the regulations promulgated under the 1926 and subsequent acts provide a different method for computing the basis is not of itself controlling. *Ayer* v. *Commissioner, supra; Kelly* v. *Anderson, supra.*

Subsequent regulations were followed in *Edward Stephen Harkness,* 21 B. T. A. 1068, due to the fact that the regulations promulgated under the governing statute produced an absurd result and no better method was suggested.

We think the method employed by the respondent for determining the basis for the stock produces a reasonable and just result. Accordingly, we hold that the basis for each share of the new stock is the quotient of the basis for the old stock, plus the subscription price of $23,400 for the new stock, divided by 2,574, representing the total number of the old and new shares.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

TRAMMELL dissents.